STATE of Wisconsin,
Plaintiff-Respondent,

v.

Scott M. HAMBLY,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2005AP3087–CR. Oral argument September 11, 2007.
—Decided February 7, 2008.*

2008 WI 10

(Also reported in 745 N.W.2d 48.)

101

For the defendant-appellant-petitioner a brief was filed by *Martha K. Askins,* Office of the State Public Defender, Madison, and oral argument by *Martha K. Askins.*

For the plaintiff-respondent the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. The defendant, Scott M. Hambly, seeks review of a published court of appeals decision affirming a judgment of conviction entered by the Circuit Court for Washington

County, Patrick J. Faragher, Judge.[1] The defendant was convicted of one count of delivering cocaine contrary to Wis. Stat. § 961.41(1)(cm) (2001–02). We affirm the decision of the court of appeals refusing to suppress the defendant's inculpatory statements and affirming the conviction.

¶ 2. The issue on review is whether the circuit court erred in denying the defendant's motion to suppress inculpatory statements he made to a law enforcement officer while he was in custody. The defendant contends that the inculpatory statements were obtained in violation of his invocation of his Fifth Amendment *Miranda*[2] right to counsel. More specifically, the defendant raises three arguments supporting suppression of his statements: (1) He effectively invoked his Fifth Amendment *Miranda* right to counsel by requesting counsel after being taken into custody and before he was interrogated; (2) The law enforcement officer's statements to him after he invoked his right to counsel constituted interrogation; and (3) In signing the *Miranda* waiver form he did not voluntarily, knowingly, and intelligently waive his right to counsel.

¶ 3. We conclude as follows:

> (1) The defendant effectively invoked his Fifth Amendment *Miranda* right to counsel when he requested counsel while he was in custody and before the law enforcement officer interrogated him under both a standard requiring only that a suspect be in custody

---

[1] *State v. Hambly,* 2006 WI App 256, 297 Wis. 2d 851, 726 N.W.2d 697.

[2] *Miranda v. Arizona,* 384 U.S. 436 (1966).

The Fifth Amendment provides that "no person . . . shall be compelled in any criminal case to be a witness against himself" and is applicable to the states through the Fourteenth Amendment.

when the request for counsel is made and a standard requiring that interrogation be "imminent or impending when the request for counsel is made." An invocation of the Fifth Amendment *Miranda* right to counsel is a defendant's request for the assistance of an attorney *"in dealing with custodial interrogation by the police."*[3]

(2) The law enforcement officer's statements to the defendant after he effectively invoked his Fifth Amendment *Miranda* right to counsel and before he was given the *Miranda* warnings did not constitute interrogation by the officer.

(3) After the defendant effectively invoked his Fifth Amendment *Miranda* right to counsel, he initiated communication with the law enforcement officer and then voluntarily, knowingly, and intelligently waived his right to counsel, rendering the inculpatory statements admissible.

¶ 4. The court is divided on the question whether to adopt a temporal standard to determine whether a suspect in custody has effectively invoked his or her Fifth Amendment *Miranda* right to counsel. Three justices, Justices Prosser, Roggensack, and Butler, adopt the standard that a suspect may effectively invoke the Fifth Amendment *Miranda* right to counsel when a suspect is in custody and has made "an unequivocal request to speak with an attorney" even before interrogation is imminent or impending. Justice Roggensack's concurrence, ¶ 106.[4]

---

[3] *McNeil v. Wisconsin,* 501 U.S. 171, 178 (1991) (emphasis in original).

[4] This concurring opinion refers "to an in-custody request for counsel invoked to protect the Fifth Amendment's right against compelled self-incrimination as the Fifth Amendment

105

¶ 5. Three justices, Justices Bradley and Crooks and the author of this opinion, conclude that they need not, and do not, address whether the appropriate temporal standard to adopt is the "anytime in custody" standard or the "imminent or impending interrogation" standard. Justice Ziegler did not participate in this case.

¶ 6. Accordingly, we affirm the decision of the court of appeals affirming the circuit court's order refusing to suppress the defendant's inculpatory statements and affirming the conviction.

## I

¶ 7. We briefly summarize the facts relating to the defendant's inculpatory statements to the officer. Detectives Rindt and Clausing, both of the Washington County Sheriff's Department, approached the defendant in a parking lot outside his apartment and attempted to convince him to speak to them without their taking him into custody.

¶ 8. The defendant repeatedly refused to speak with the detectives. Detective Rindt first requested that the defendant meet with the detectives at the police station to discuss several drug transactions in which he was involved. The defendant said he did not want to go to the station. Rindt then asked whether they could talk inside the defendant's residence. The defendant refused this request as well. Rindt then told the defendant that he and Clausing were investigating drug transactions and informed the defendant that they wanted to speak with him about options available to him. Rindt again asked the defendant if he would converse with the

right to counsel." Justice Roggensack's concurrence, ¶ 105 n.1.

detectives somewhere. The defendant refused this final request, telling the detectives to come back another day.

¶ 9. Rindt then told the defendant that he was under arrest, handcuffed him, and began leading him to the squad car. As Rindt and the defendant walked to the squad car, the defendant said that he wanted to speak with an attorney. Rindt put the defendant in the back of the car and told him that he could call an attorney once they arrived at the Washington County Jail. Rindt then waited with the defendant in the car while Clausing searched the defendant's vehicle incident to arrest. No evidence was produced at trial from this search.

¶ 10. While in the squad car, the defendant told Rindt that he did not understand why he was under arrest. Rindt responded that the defendant had sold cocaine to an informant, Mychal Meyer, on three occasions and that Meyer had been cooperating with the police during those transactions. The defendant again stated he did not understand what was going on and told Rindt that he wanted to speak to him and to find out what his options were.

¶ 11. Rindt read the defendant his *Miranda* warnings. Rindt testified that the defendant said he understood his rights, did not have any questions, and wanted to speak with Rindt about the drug transactions. Rindt then removed the defendant's handcuffs and placed him in the front seat of the squad car. Rindt asked the defendant to review the *Miranda* waiver of rights form, which the defendant did. The defendant then signed a *Miranda* waiver form.

¶ 12. Rindt interviewed the defendant for approximately one hour. During the interview, the defendant admitted to Rindt that he had sold cocaine to Meyer on several occasions. Rindt spent most of the interview determining whether the defendant would

cooperate with the police. Deciding that the defendant would not cooperate, Rindt once again handcuffed the defendant, placed him in the back of the squad car, and took him to jail.

¶ 13. The State charged the defendant with three counts of delivering cocaine to Meyer. The defendant moved to suppress the statements he made to Rindt in the squad car. The circuit court denied this motion after a hearing. The circuit court concluded that the defendant had unequivocally invoked his Fifth Amendment *Miranda* right to counsel and that under *Edwards v. Arizona,* 451 U.S. 477 (1981), all questioning of the defendant had to cease. In *Edwards,* the United States Supreme Court held that once an accused has "expressed his desire to deal with the police only through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."[5] Nevertheless, even though the defendant requested counsel, the circuit court refused to suppress the defendant's inculpatory statements because the defendant initiated a substantive discussion with the law enforcement officer. The circuit court also found that the defendant's waiver of his *Miranda* rights was knowing and intelligent.

¶ 14. The jury found the defendant guilty of one count of delivering five grams or less of cocaine and not guilty of one charge of delivering one gram or less of cocaine. The jury divided on a second charge of delivering one gram or less of cocaine.

¶ 15. The defendant appealed his conviction, arguing that the circuit court had erred in denying his

---

[5] *Edwards v. Arizona,* 451 U.S. 477, 484–85 (1981).

motion to suppress the statements he made to Rindt. The court of appeals affirmed the circuit court's order denying suppression and affirmed the conviction.

## II

¶ 16. We consider first the State's argument that the defendant's request for counsel did not constitute an effective invocation of his Fifth Amendment *Miranda* right to counsel. Whether the defendant effectively invoked his Fifth Amendment *Miranda* right to counsel is a question of constitutional fact that this court decides under a two-part test.[6] This court will uphold a circuit court's findings of historical or evidentiary fact unless they are clearly erroneous.[7] This court determines the application of constitutional principles to those evidentiary facts independently of the circuit court and court of appeals but benefits from the circuit court's and court of appeals' analyses.[8]

¶ 17. The State contends that the instant case raises the question whether a suspect can anticipatorily invoke his Fifth Amendment *Miranda* right to counsel. The State answers this question in the negative and asserts that a criminal defendant does not effectively

[6] *State v. Jennings*, 2002 WI 44, ¶ 20, 252 Wis. 2d 228, 647 N.W.2d 142 (citation omitted).

[7] *See* Wis. Stat. § 805.17(2) (2005–06). The "clearly erroneous" standard of review for findings of fact made by a circuit court is essentially the same as the "great weight and clear preponderance" test. *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575 (Ct. App. 1983) (citing *Robertson-Ryan & Assocs., Inc. v. Pohlhammer*, 112 Wis. 2d 583, 591 n.*, 334 N.W.2d 246 (1983) (Abrahamson, J., dissenting).

[8] *Jennings*, 252 Wis. 2d 228, ¶ 20.

invoke his Fifth Amendment *Miranda* right to counsel unless he is both in custody and is being interrogated.[9]

¶ 18. The State rests its position on language in a footnote in *McNeil v. Wisconsin,* 501 U.S. 171, 182 n.3 (1991), in which the United States Supreme Court declared, "We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation' . . . ."[10]

---

[9] As an alternative position, the State argues that if a suspect is in custody, an invocation of the Fifth Amendment *Miranda* right to counsel is effective so long as interrogation is imminent.

[10] The *McNeil* Court held that invocation of the Sixth Amendment right to counsel does not act as an invocation of the Fifth Amendment *Miranda* right to counsel. The suspect in *McNeil* had never invoked his Fifth Amendment *Miranda* right to counsel. He had instead invoked his Sixth Amendment right to the assistance of counsel at a preliminary hearing on a charge unrelated to the one for which he was later interrogated in custody. *See McNeil,* 501 U.S. at 173.

While not reaching any conclusion on the issue of an anticipatory invocation of the Fifth Amendment *Miranda* right to counsel, the United States Supreme Court declared in *McNeil* that "[i]f the *Miranda* right to counsel can be invoked at a preliminary hearing, it could be argued, there is no logical reason why it could not be invoked by a letter prior to arrest, or indeed even prior to identification as a suspect. . . . The fact that we have allowed the *Miranda* right to counsel, once asserted, to be effective with respect to future custodial interrogation does not mean that we will allow it to be asserted initially outside the context of custodial interrogation, with similar future effect." *McNeil,* 501 U.S. at 182 n.3.

*Compare Smith v. Illinois,* 469 U.S. 91, 97 n.6 (1984) (rejecting as "plainly wrong" the position "that the authorities need not stop their questions if an accused requests counsel prior to or during the *Miranda* warnings," reasoning that "[a] request for counsel coming at *any* stage of the process requires

110

¶ 19. A tension may be perceived between the *McNeil* language about a suspect not anticipatorily invoking Fifth Amendment *Miranda* rights and the *Miranda* Court's statement that "a pre-interrogation request for a lawyer . . . affirmatively secures [the] right to have one."[11] The *Miranda* Court did not, however, explicitly address what is meant by a "pre-interrogation request" for counsel during custody and did not address at what point prior to custodial interrogation a suspect may effectively invoke the Fifth Amendment *Miranda* right to counsel. Likewise, the McNeil Court did not address the question whether a suspect may be in the "context" of custodial interrogation before actual interrogation begins.

¶ 20. Indeed, case law acknowledges that the United States Supreme Court has not resolved the effect of a suspect's request for an attorney while in custody but prior to interrogation.[12]

---

that questioning cease until counsel has been provided.") (quotation marks and citations omitted) (emphasis in original).

The defendant in *Smith* requested the assistance of counsel while in a police interrogation room and just after a law enforcement officer had informed the defendant that he had a right to consult with a lawyer and to have a lawyer present with him during questioning. 469 U.S. at 92–93. The holding in *Smith* therefore does not contradict the McNeil Court's later assertion that the Court had never held that a person can invoke his or her *Miranda* rights in a context other than custodial interrogation.

[11] *Miranda*, 384 U.S. at 470. *See also Miranda*, 384 U.S. at 444–45.

[12] *See, e.g., Alston v. Redman*, 34 F.3d 1237, 1245 (3d Cir. 1994), *cert. denied*, 513 U.S. 1160 (1995); *People v. Villalobos*, 737 N.E. 2d 639, 642 (Ill. 2000); *Russell v. State*, 215 S.W.3d 531, 536 (Tex. App. 2007).

¶ 21. *McNeil* not only raised the question of the timing of a suspect's request for counsel as an effective invocation of the Fifth Amendment *Miranda* right to counsel but also stated that under *Edwards* an effective invocation of the Fifth Amendment *Miranda* right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police.*"[13] The timing of the request for counsel may help determine whether the request is for the assistance of an attorney in dealing with custodial interrogation by the police, as the cases demonstrate.

■

¶ 22. Case law supports the State's position that a suspect's Fifth Amendment *Miranda* rights are specific to custodial interrogation. The facts in *Miranda* involved custodial interrogation.[14] "It is the premise of

---

[13] *McNeil*, 501 U.S. at 178 (emphasis in original).

[14] The *Miranda* Court described its holding as follows: "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444. *See also Miranda*, 384 U.S. at 478.

The *Miranda* court defined custodial interrogation as follows: "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444.

The Miranda Court drew upon its prior decision in *Escobedo v. Illinois*, 378 U.S. 478 (1964), a Sixth Amendment right-to-counsel case. The Miranda Court considered *Escobedo* relevant in part because law enforcement officers in *Escobedo*

*Miranda* that the danger of coercion results from the interaction of custody and official interrogation."[15] The procedural safeguards set forth in *Miranda's* protection of Fifth Amendment rights "are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation."[16]

"took the defendant into custody and interrogated him in a police station for the purpose of obtaining a confession" and because "[d]uring this interrogation, the police denied his request to speak to his attorney." *Miranda,* 384 U.S. at 440.

The Escobedo Court stated the issue before the Court as follows: "The critical question in this case is whether, under the circumstances, the refusal by the police to honor petitioner's request to consult with his lawyer *during the course of an interrogation* constitutes a denial of 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution . . . ." *Escobedo,* 378 U.S. at 479 (emphasis added). During the course of his interrogation at police headquarters, Escobedo "repeatedly asked to speak to his lawyer" and was told that "his lawyer 'didn't want to see' him." *Escobedo,* 378 U.S. at 481. Escobedo also made an initial request for counsel while being transported to the police station. *Escobedo,* 378 U.S. at 479.

Professor LaFave summarizes *Escobedo* as follows:

Indeed, the Supreme Court itself ultimately came to treat *Escobedo* as nothing more than a "false start" toward the new approach to the confessions problem undertaken later in *Miranda.* . . . The Court in retrospect concluded [in *Kirby v. Illinois,* 406 U.S. 682, 689 (1972)] that the " 'prime purpose' of *Escobedo* was not to vindicate the constitutional right to counsel as such, but, like *Miranda,* 'to guarantee full effectuation of the privilege against self-incrimination'." Moreover, added the Kirby Court [406 U.S. at 689], *Escobedo* is now limited in its "holding . . . to its own facts."

2 LaFave et al., *supra* note 14, § 6.4(c) at 665–66. *See also id.* at 664–65.

[15] *Illinois v. Perkins,* 496 U.S. 292, 297 (1990).

[16] *Rhode Island v. Innis,* 446 U.S. 291, 300 (1980).

The third circuit federal court of appeals has concluded that allowing a suspect in custody "to invoke the right to counsel

¶ 23. The State argues that in the present case when the defendant asked for an attorney he was not subject to custodial interrogation. The State concludes that the defendant was in custody but was not being interrogated, that the defendant's request for an attorney was thus anticipatory, and that the defendant did not effectively invoke his Fifth Amendment *Miranda* right to counsel.

¶ 24. The federal and state cases the State cites do not, however, support its position that a request for counsel before interrogation cannot anticipatorily constitute an effective invocation of the Fifth Amendment *Miranda* right to counsel even if the request was for assistance of counsel during interrogation.[17] We are

outside of the context of custodial interrogation, would diminish the 'bright line' nature of the Supreme Court's *Miranda* jurisprudence, often cited by the Court as one of the qualities of that body of law." *Alston,* 34 F.3d at 1249 n.11.

[17] The State's brief relies on *Alston,* 34 F.3d at 1244–48 (no invocation of Fifth Amendment right to counsel when the suspect signed a letter ostensibly invoking the right to counsel three days after police interrogated him and three days before his next custodial interrogation); *United States v. LaGrone,* 43 F.3d 332, 337–39 (7th Cir. 1994) (no invocation of Fifth Amendment *Miranda* right to counsel when, after police had questioned him and some time before police questioned him again, the suspect in custody asked to speak with his attorney specifically for the purpose of deciding whether to consent to a search of his store); *United States v. Grimes,* 142 F.3d 1342, 1348–50 (11th Cir. 1998) (no invocation of Fifth Amendment right to counsel when the suspect signed a "claim of rights form" more than a month before he was interrogated; interrogation not imminent); *People v. Nguyen,* 33 Cal. Rptr. 3d 390, 392–95 (Ct. App. 2005) (no invocation of Fifth Amendment *Miranda* right to counsel when the suspect attempted to telephone her attorney before police had finished arresting her and before they attempted to interrogate her; request short of clear expression

persuaded by the case law that the State's position is incorrect and do not adopt the State's position. Rather, the case law the State cites recognizes that a suspect in custody may request counsel and effectively invoke the Fifth Amendment *Miranda* right to counsel when faced with "impending interrogation" or when interrogation is "imminent" and the request for counsel is for the assistance of counsel during interrogation.[18]

¶ 25. For example, in *United States v. LaGrone,* 43 F.3d 332 (7th Cir. 1994), the Seventh Circuit Court of Appeals declared that LaGrone's request for counsel was not an effective Fifth Amendment *Miranda* invocation of counsel for two reasons. First, interrogation was not impending. Relying on *McNeil,* the court of appeals explained that "in order for a defendant to invoke his *Miranda* rights the authorities must be conducting interrogation, or interrogation must be im-

---

for attorney's assistance; custodial interrogation was not imminent); *Russell v. State,* 215 S.W.3d 531, 534–36 (Tex. Ct. App. 2007) (no invocation of Fifth Amendment *Miranda* right to counsel when the suspect asked to call his attorney in response to a police search and confiscation of his cell phone; interrogation not imminent; "[W]e do not believe the existing case law supports the right of an accused to invoke his *Miranda* rights in any context other than a custodial interrogation."); and *Villalobos,* 737 N.E. 2d at 642–45 (no invocation of Fifth Amendment *Miranda* right to counsel when the suspect filed a claim of rights form asserting right to refrain from making any statements without counsel two days before being interrogated in reference to an unrelated charge; interrogation was not imminent).

[18] For additional cases cited for the proposition that the Fifth Amendment *Miranda* right to counsel may be validly asserted only when the authorities are conducting custodial interrogation or such interrogation is imminent and the request for counsel is for the assistance of counsel during interrogation, see 2 LaFave et al., *supra* note 14, § 6.9(g) at 869, n.200.

minent."[19] The court of appeals concluded that this rule "advances the twin goals of *Miranda:* providing an opportunity for the defendant to dissipate the compulsion and allowing law enforcement the ability to conduct investigations."[20] LaGrone had not requested an attorney "immediately before, in response to, or during custodial interrogation."[21]

¶ 26. Second, while in custody,[22] LaGrone answered some questions and then asked to consult with his attorney "about whether to consent to [a] search of his [grocery] market."[23] The *LaGrone* court held that the defendant did not effectively invoke his Fifth Amendment *Miranda* right to counsel because the matter at issue was a search warrant and did "not concern [interrogation,] 'the particular sort of lawyerly assistance that is the subject of *Miranda*.' "[24] The *LaGrone* court concluded that *Edwards* requires "at a minimum, some statement that can reasonably be construed to be expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police.*"[25]

¶ 27. The *LaGrone* case makes clear that a suspect in custody can invoke the Fifth Amendment *Miranda* right to counsel when (1) interrogation is

---

[19] *LaGrone,* 43 F.3d at 339.

[20] *Id.* at 339–40.

[21] *Id.* at 339.

[22] "At the time LaGrone asked to talk to his attorney, he was not in a custodial interrogation atmosphere." *LaGrone,* 43 F.3d at 337.

[23] *Id.*

[24] *Id.* (quoting *McNeil,* 501 U.S. at 178). The Indiana Constitution affords a suspect the right to a lawyer before consenting to a warrantless search of property.

[25] *LaGrone,* 43 F. 3d at 336 (emphasis in original).

imminent, and (2) the request for counsel relates to assistance of counsel during interrogation.

¶ 28. Other cases the State cites also recognize that an effective invocation of the Fifth Amendment *Miranda* right to counsel may be made by a suspect in custody requesting counsel when the suspect is faced with impending or imminent interrogation.[26] None of the decisions the State cites specifies the standard to be used in determining whether an interrogation is impending or imminent. It appears to us from the cases that an interrogation is impending or imminent if a reasonable person in the defendant's position would have believed that interrogation was imminent or impending.[27]

¶ 29. Under *LaGrone* and other cases a suspect may effectively invoke his or her Fifth Amendment *Miranda* right to counsel by requesting counsel when a reasonable person in the suspect's position would be-

---

[26] *See Nguyen,* 33 Cal. Rptr. 3d at 395 ("[A] suspect may invoke *Miranda*'s protections if custodial interrogation is impending or imminent."); *Grimes,* 142 F.3d at 1348 (*"Miranda* rights may be invoked only during custodial interrogation or when interrogation is imminent."); *Villalobos,* 737 N.E.2d at 646 ("[T]he suspect must invoke the right to counsel during custodial interrogation or when custodial interrogation was imminent.").

[27] The objective standard of the reasonable person in the defendant's position to determine whether interrogation is imminent or impending is the same objective reasonable person standard used to determine whether the person is in custody for purposes of *Miranda* warnings. See State v. Swanson, 164 Wis. 2d 437, 446–47, 475 N.W.2d 148 (1991). *See also Nguyen,* 33 Cal. Rptr. 3d at 394 ("[D]efendant reasonably could conclude interrogation was imminent if the arresting officer began questioning defendant's companion immediately after placing them in custody.").

117

lieve that interrogation is imminent. These cases impose a temporal limit on a request for counsel as well as the requirement that the request for counsel must relate to assistance of counsel during interrogation.

¶ 30. Another possible standard for *Miranda* and *Edwards* purposes is that a suspect may effectively invoke his or her Fifth Amendment *Miranda* right to counsel by requesting counsel any time the suspect is in custody, even before *Miranda* warnings or the onset of questioning.[28] *State v. Collins,* 122 Wis. 2d 320, 363 N.W.2d 229 (Ct. App. 1984), may be read as adopting such a standard.[29]

¶ 31. Collins requested counsel immediately after he was arrested at 2:35 p.m. at his home. He made incriminating statements after law enforcement officers initiated interrogation at 4:05 p.m. at the police station. The court of appeals rejected the State's argument that Collins' request for counsel was an ineffective invocation of his Fifth Amendment *Miranda* right to counsel because the invocation was made before custodial interrogation had begun and the *Miranda* rights

---

[28] *See, e.g., Villalobos,* 737 N.E.2d at 650 (Heiple, J., dissenting) (focus should not be on when the defendant made the request for counsel but on the type of assistance of counsel that defendant requested; thus when suspect clearly and unambiguously requests the assistance of an attorney in dealing with custodial interrogation, that request must be honored; "the fifth amendment right to counsel attaches and may be invoked by a defendant at any time after he is taken into custody.").

[29] The *Collins* court quotes *Miranda* for the rule that an invocation of counsel is effective if it comes at any stage of the process. *State v. Collins,* 122 Wis. 2d 320, 329, 363 N.W.2d 229 (Ct. App. 1984) (quoting *Miranda,* 384 U.S. at 444–45). Neither *Collins* nor *Miranda* states precisely what is denoted by the term process or when that process begins or ends.

had not yet attached. The court of appeals decided that "Collins' request to talk to his attorney, made after he was in custody but before he was advised of his rights, was sufficient to trigger the protection of the *Edwards* rule."[30] The *Collins* court of appeals does not use the phrase "impending or imminent interrogation" to describe the situation in which Collins found himself when he requested counsel.[31]

¶ 32. The court is divided about whether to adopt a temporal standard to determine whether a suspect in custody who requests counsel has effectively invoked his or her Fifth Amendment *Miranda* right to counsel. Three justices, Justices Prosser, Roggensack, and Butler, adopt the standard that a suspect may effectively invoke the Fifth Amendment *Miranda* right to counsel when a suspect is in custody and has made "an unequivocal request to speak with an attorney" even

---

[30] *Collins,* 122 Wis. 2d at 329. The *Collins* court rejected the State's argument that Collins' invocation could not be effective "because no custodial interrogation had yet begun":

> There is no indication in either *Miranda v.* Arizona, 384 U.S. 436 (1966), or *Edwards* that a request for counsel must be made *after* the warnings are given in order to be valid. On the contrary, the Miranda Court said: "If . . . [the suspect] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." 384 U.S. at 444–45. The Court also said that a pre-interrogation request for a lawyer "affirmatively secures [a suspect's] right to have one. . . . " *Id.* at 470. The Court emphasized that an effective *waiver* of the right to counsel can occur only after warnings are given. *Id.* It did not indicate, however, that the same rule applies to an effective *assertion* of the right to counsel.

*Id.* at 328–29.

[31] *See* State v. Torres, 412 S.E. 2d 20, 25 (N.C. 1992) (characterizing *Collins* as involving a suspect who "invoked his right to have counsel present during his impending interrogation").

before interrogation is imminent or impending. Justice Roggensack's concurrence, ¶ 106. They conclude that the *LaGrone* line of cases adopting a temporal requirement of impending or imminent interrogation contravenes *Miranda*. These three justices conclude that the defendant's request for an attorney in the present case constituted an effective invocation of the Fifth Amendment *Miranda* right to counsel under the "anytime in custody" temporal standard.

¶ 33. Three justices, Justices Bradley and Crooks and the author of this opinion, conclude that they need not, and do not, address whether the appropriate temporal standard to adopt to determine whether a suspect in custody has effectively invoked his or her Fifth Amendment right to counsel is the "anytime in custody" standard or the "imminent or impending interrogation" standard. These three justices conclude that the defendant's request for an attorney in the present case constituted an effective invocation of his Fifth Amendment *Miranda* right to counsel under the temporal standard of "imminent or impending" interrogation. Because the defendant met this standard, these three justices conclude that the defendant's request for an attorney in the present case also constituted an effective invocation of the Fifth Amendment *Miranda* right to counsel under the "anytime in custody" standard.

¶ 34. Concerned that this court might adopt the "imminent or impending interrogation" temporal standard, the State argues that the defendant has not met this temporal standard for two reasons: First, the defendant had no reason to assume that custodial interrogation was imminent because the drive to the jail would take between fifteen and twenty minutes and Rindt told the defendant he could call a lawyer when they got there. Second, the defendant's simply stated

120

request for counsel was a request for counsel to secure his release from police custody, not to help him in interrogation. We are not convinced by the State's reasoning.

¶ 35. The record does not reveal when Rindt initially intended to subject the defendant to custodial interrogation. In the minutes leading up to the defendant's request for counsel, Detective Rindt made it clear that he intended to question the defendant. The defendant could have reasonably surmised that because Rindt was persistent in wanting to interrogate him, Rindt would continue to attempt to interrogate him in a custodial setting after he refused to speak with Rindt in a noncustodial setting. The defendant had no reason to believe that Rindt's eagerness to question him dissipated once Rindt took him into custody.

¶ 36. The State's contention that the defendant's request for counsel was directed to secure his release from police custody and that the defendant's request for counsel was not for counsel to help him in dealing with custodial interrogation by the police is unconvincing. When the defendant in the present case requested an attorney, his entire discussion with Rindt had thus far focused on whether the defendant would permit Rindt to interview him. Unlike in *LaGrone,* the defendant in the present case did not invoke his right to counsel in response to a police officer's request for a consent to search. The defendant instead requested an attorney after Rindt had already made it evident that he wished to interrogate the defendant and had taken the defendant into custody when the defendant rebuffed several of Rindt's offers to conduct a noncustodial interview.[32]

---

[32] The State's contention that the defendant's request for counsel was merely anticipatory because custodial interroga-

¶ 37. The circumstances in the present case of impending interrogation demonstrate that the defendant, unlike the suspects in *McNeil* or *LaGrone,* expressed a desire for the assistance of an attorney *"in dealing with custodial interrogation by the police."*[33]

¶ 38. The State cites several cases in addition to *McNeil* and *LaGrone* in support of its position that the defendant's request for counsel was not timely, but these cases are easily distinguished from the one at hand.

¶ 39. In *State v. Kramer,* 2006 WI App 133, 294 Wis. 2d 780, 720 N.W.2d 459, for example, Kramer asked officers for an attorney to assist him in dealing with the police during an armed standoff. Everyone agreed that Kramer was not in custody when he requested counsel. Furthermore, ruled the court of appeals, the request for counsel was clearly not one for assistance during a custodial interrogation.[34] Accordingly, the court of appeals ruled that Kramer had no right to expect that any ensuing statements would not be used substantively against him at trial.

¶ 40. In *State v. Hassel,* 2005 WI App 80, 280 Wis. 2d 637, 696 N.W.2d 270, Hassel was not in custody at the time he asked to remain silent in response to questions from law enforcement officers; he was not taken into custody until the next day.[35] Hassel did not request counsel. Hassel's request to remain silent related to interrogation but not to custodial interroga-

tion does not normally take place in a squad car is also not convincing. In numerous cases interrogation has taken place in a squad car.

[33] *See McNeil,* 501 U.S. at 179 (emphasis in original).

[34] *State v. Kramer,* 2006 WI App 133, ¶ 10, 294 Wis. 2d 780, 720 N.W.2d 459.

[35] *Hassel,* 2005 WI App 80, ¶¶ 2–3, 280 Wis. 2d 637, 696 N.W.2d 270.

tion. The court of appeals concluded that Hassel's invocation of his right to remain silent was not a valid invocation of his Fifth Amendment right to remain silent "because he was not subject to custodial interrogation. Therefore, there is no prior invocation with which the police should have been concerned."[36]

¶ 41. *Kramer* and *Hassel* govern a suspect who is not in custody during police interrogation. The cases stand for the rule that a person who is not in custody cannot anticipatorily invoke a Fifth Amendment *Miranda* right to counsel or right to remain silent. In the instant case, the defendant was in custody and his request for counsel was an expression of a desire "for the assistance of an attorney *in dealing with custodial interrogation by the police.*"[37]

¶ 42. United States v. Kelsey, 951 F.2d 1196 (10th Cir. 1991), is similar to the present case and is instructive. Kelsey was in custody during a search of his home. He "asked to see his lawyer three or four times."[38] The court of appeals concluded that it was clear that "the police intended to question Kelsey at some point at his home, and that the police understood Kelsey to be invoking his right to counsel during questioning."[39] Kelsey was facing impending interrogation.[40] Mindful of *McNeil,* the court of appeals ruled that Kelsey had

---

[36] *Id.,* ¶ 20.

[37] *See McNeil,* 501 U.S. at 179 (emphasis in original).

[38] *United States v. Kelsey,* 951 F.2d 1196, 1198 (10th Cir. 1991). "Recognizing the import of Kelsey's request, the police stated that if they allowed him to see his lawyer they could not question him further." *Kelsey,* 951 F.2d at 1199.

[39] *Id.*

[40] In *Alston,* 34 F.2d at 1249, for example, the federal court of appeals characterized the suspect in *Kelsey* as facing impending interrogation.

123

made a statement that could "reasonably be construed to be [an] expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police*"[41] and that "the fact that Kelsey invoked his right to counsel before the police were required to inform him of that right is irrelevant."[42]

¶ 43. Because the defendant was in custody and had a reasonable belief that interrogation was imminent or impending, his request for counsel was an effective invocation of his Fifth Amendment *Miranda* right to counsel under both the "anytime in custody" standard and the "imminent or impending interrogation" temporal standard.

¶ 44. The present case illustrates "the type of coercive atmosphere that generates the need for application of the *Edwards* rule."[43] After the defendant effectively invoked his Fifth Amendment *Miranda* right to counsel, police interrogation, unless initiated by the defendant, would violate *Edwards v. Arizona,* 451 U.S. 477 (1981).

### III

¶ 45. We now turn to the question whether Detective Rindt's statement to the defendant after the defendant invoked his right to counsel constituted interrogation.

¶ 46. The seminal case interpreting the meaning of interrogation under *Miranda* is *Rhode Island v.*

---

[41] *Kelsey,* 951 F.2d at 1199 (quoting *McNeil,* 501 U.S. at 179) (emphasis in *McNeil*).

[42] *Kelsey,* 951 F.2d at 1199.

[43] *Id.*

*Innis,* 446 U.S. 291 (1980). The United States Supreme Court declared in *Innis* that "[t]he term 'interrogation' under *Miranda* refers not only to express questioning," but also to the functional equivalent of express questioning.[44] The "functional equivalent of express questioning" (sometimes referred to in the cases and the literature as the "functional equivalent of interrogation") means "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response."[45] A law enforcement officer may thus be viewed as interrogating a suspect by a statement, without asking a single question, if the law enforcement officer's conduct or speech could have had the force of a question on the suspect. "Interrogation" "must reflect a measure of compulsion above and beyond that inherent in custody itself."[46]

■

¶ 47. The *Innis* test for interrogation was summarized in *State v. Cunningham,* 144 Wis. 2d 272, 278–79, 423 N.W.2d 862 (1988), as follows: "[I]f an objective observer (with the same knowledge of the suspect as the police officer) could, on the sole basis of hearing the officer's remarks or observing the officer's conduct, conclude that the officer's conduct or words would be likely to elicit an incriminating response, that is, could reasonably have had the force of a question on the suspect, then the conduct or words would constitute interrogation." The concept of interrogation thus reflects "both an objective forseeability standard and the

---

[44] *Innis,* 446 U.S. at 301.

[45] *Id.*

[46] *Id.* at 300.

police officer's specific knowledge of the suspect."[47] The focus is primarily upon the perceptions of the suspect but the intent of the police is not ignored.[48]

¶ 48. In interpreting and applying the *Innis* test of what constitutes interrogation, a court must keep in mind the evils addressed by *Miranda*. As this court explained in *Cunningham,* the purpose of *Miranda* and *Innis* is to prevent " 'government officials from using the coercive nature of confinement to extract confessions that would not be given in an unrestrained environment.' "[49] We must determine whether Rindt's conduct and words implicate this purpose.

■

¶ 49. Whether a suspect was subject to interrogation by the government is a question of constitutional fact. This court will not upset the circuit court's findings of evidentiary or historical fact unless they are clearly erroneous.[50] The determination of whether the facts satisfy the legal standard is a question of constitutional law which this court decides independently of the circuit court or court of appeals but benefiting from their analyses.[51]

¶ 50. The defendant asserts that the interaction between himself and Rindt was either an interrogation in the traditional sense (a question and answer format) or the functional equivalent of express questioning.

[47] *Cunningham,* 144 Wis. 2d at 278.

[48] *Innis,* 446 U.S. at 301 & n.7; *Cunningham,* 144 Wis. 2d at 277.

[49] *Cunningham,* 144 Wis. 2d at 280–81, 283 (citation omitted).

[50] *Id.* at 281–82; *State v. Fischer,* 2003 WI App 5, ¶ 28, 259 Wis. 2d 799, 656 N.W.2d 503.

[51] *Cunningham,* 144 Wis. 2d at 282.

¶ 51. We reject the defendant's claim that Rindt's explanation of why the defendant was being arrested amounted in the present case to interrogation in the traditional sense. Detective Rindt asked no questions of the defendant. A statement is not "express questioning."

¶ 52. We therefore address the defendant's claim that Rindt's response was the functional equivalent of express questioning.

¶ 53.. The case law is instructive, although each case stands on its own facts. In *Innis,* the Court found no interrogation had taken place when two officers conversed in front of Innis about their desire to locate a gun Innis had supposedly used and discarded, lest any students from a nearby school for handicapped children "find a weapon with shells and . . . hurt themselves."[52] In response to the officers' colloquy, Innis revealed the gun's location.

¶ 54. The United States Supreme Court in *Innis,* determined that no interrogation had taken place, stating that "the entire conversation appears to have consisted of no more than a few offhand remarks"[53] and that nothing in the record suggested that "the officers were aware that [Innis] was peculiarly susceptible to an appeal to his conscience concerning the safety of handicapped children" or that "the police knew that [Innis] was unusually disoriented or upset at the time of his arrest."[54]

---

[52] *Innis,* 446 U.S. at 294–95. A third officer, not party to the conversation, testified of one colleague: "He said it would be too bad if the little—I believe he said a girl—would pick up the gun, maybe kill herself." *Id.* at 295.

[53] *Id.* at 303.

[54] *Id.* at 302–03.

¶ 55. In *Easley v. Frey,* 433 F.3d 969 (7th Cir. 2006), the Seventh Circuit Court of Appeals concluded that the following did not rise to the functional equivalent of interrogation: an investigator's advice to the suspect, a prisoner, that investigators already "had inmate testimony [indicating] that [the suspect] and another individual were the . . . perpetrators of [a] murder . . . and that if convicted [of the murder], [the suspect] could be subject to the death penalty."[55] The court of appeals determined that the investigator's statement to the suspect did not amount to "anything more than a matter-of-fact communication of the evidence against him and the potential punishment he faced."[56]

¶ 56. In *State v. Cunningham,* 144 Wis. 2d 272, 144 Wis. 2d 272, 423 N.W.2d 862 (1988), in the course of searching Cunningham's home, a police officer showed Cunningham an unloaded revolver the officer had discovered in Cunningham's bedroom and remarked to another officer, "This was apparently what Mr. Cunningham was running into the bedroom for."[57] The *Cunningham* court concluded that the officer's words and conduct were not likely to elicit an incriminating response, that is, the officer's words and conduct could not reasonably have had the force of a question on the suspect. The court explained that there was no indication in *Cunningham* that the suspect "was unusually susceptible to the officer's words and conduct in displaying the gun" or that "at the time he made the statements the [suspect] was unusually disoriented or up-

---

[55] *Easley,* 433 F.3d at 971.

[56] *Easley,* 433 F.3d at 974.

[57] *Cunningham,* 144 Wis. 2d at 275.

set."[58] It also viewed the officer's words as "not as provocative as the officer's comments in *Innis*."[59] Accordingly, the *Cunningham* court concluded that the officer's words and conduct did not constitute interrogation.

¶ 57. As in the *Cunningham* case, Rindt made a matter-of-fact communication of the evidence the police possessed. Rindt's comment was not as provocative as that at issue in *Easley,* in which the investigator not only spoke of evidence against the suspect but also warned the suspect that he could face the death penalty. Detective Rindt's comment may be favorably distinguished from the police conduct at issue in *Innis, Easley,* and *Cunningham,* because Rindt's comment was reasonably responsive to the defendant's own statement that he did not understand why he was under arrest.[60] Confronting a suspect with incriminating physical evidence, or verbally summarizing the State's case against the suspect, does not necessarily constitute the functional equivalent of express questioning.[61]

---

[58] *Id.* at 282.

[59] *Id.* at 283.

[60] The defendant's confusion may have been justifiable, given that the defendant was taken into custody in September 2003; the three transactions involving the defendant and Meyer occurred in November 2002, February 2003, and April 2003.

For cases holding that an officer's explanation of the reason for an arrest in response to a suspect's inquiry is not the functional equivalent of express questioning, see, *e.g., United States v. Taylor,* 985 F.2d 3, 8 (1st Cir. 1993).

[61] *Cunningham,* 144 Wis. 2d at 282. *See also United States v. Payne,* 954 F.2d 199, 202 (4th Cir. 1992) ("[T]he *Innis* definition of interrogation is not so broad as to capture within *Miranda's* reach all declaratory statements by police officers

¶ 58. Although Meyer, the informant, was a child-hood friend of the defendant, nothing in the record supports the suggestion that Rindt knew or should have known that his brief response would result in the defendant's further statements. An objective observer could not have concluded that Rindt's response to the defendant, who stated that he did not understand why he was under arrest, would likely elicit an incriminating response. Rindt merely stated that the defendant had sold drugs to an informant who had been cooperating with police during those transactions. We conclude that "[t]he compelling pressures of in-custody interrogation identified in *Miranda* as working 'to undermine the individual's will to resist and to compel him to speak' were not present in the circumstances of this case."[62]

¶ 59. The defendant relies heavily on *State v. Bond,* 2000 WI App 118, ¶ 15, 237 Wis. 2d 633, 614 N.W.2d 552, *aff'd by an equally divided court,* 2001 WI 56, 243 Wis. 2d 476, 627 N.W.2d 484. In *Bond,* the suspect was in custody but had not been given the *Miranda* warnings. The court of appeals determined that the circuit court erred in failing to suppress Bond's statement made in response to a police officer's remark to Bond.

concerning the nature of the charges against the suspect and the evidence relating to those charges."); *United States v. Jackson,* 863 F.2d 1168 (4th Cir. 1989) (no interrogation when, in response to a suspect's questions about the reason for his arrest, a DEA agent named the person to whom police believed the suspect had sold cocaine); *State v. Spencer,* 826 A.2d 546 (N.H. 2003) (no interrogation when a police officer responded to a suspect's protests that police had arrested the wrong person by showing the suspect bank surveillance photographs allegedly capturing her in the act of cashing forged checks).

[62] *United State v. Crisco,* 725 F.2d 1228, 1232 (9th Cir. 1984).

¶ 60. The police arrested Bond on suspicion of making threatening phone calls to an undercover officer. The speaker in the phone calls referred to himself as "the man behind the man."[63] Upon being taken into custody, Bond repeatedly asked why he was under arrest, and one officer—apparently wanting first to remove Bond from the public corridor in which police had arrested him—told Bond that they would tell him why he was under arrest "in a minute."[64] Bond replied, "Oh you're the man."[65] Another officer then retorted, "No, you're the man behind the man."[66] Bond's answer —"Ah, so that's what this is about"—was produced as evidence at his trial.[67]

¶ 61. The officer in *Bond* did not make "a matter-of-fact communication of the evidence" against Bond; he made a cryptic remark that made sense only to the person who committed the crime for which Bond was arrested. Consequently, Bond's comment understanding the officer's words was an expected response, and thus the officer's words were the functional equivalent of interrogation. One of the officers testified that the comment "was designed . . . to elicit a response from" Bond.[68] The *Bond* court of appeals concluded that the officer's remark was the equivalent of interrogation in the absence of a *Miranda* warning and that Bond's incriminating response had to be suppressed.

---

[63] *State v. Bond,* 2000 WI App 118, ¶¶ 3–5, 237 Wis. 2d 633, 614 N.W.2d 552, *aff'd by an equally divided court,* 2001 WI 56, 243 Wis. 2d 476, 627 N.W.2d 484.

[64] *Bond,* 237 Wis. 2d 633, ¶ 4.

[65] *Id.,* ¶¶ 4–5.

[66] *Id.,* ¶¶ 4–5 & n.4.

[67] *Id.,* ¶¶ 5–6.

[68] *Id.,* ¶ 18.

¶ 62. *Bond* is significantly different from the present case. Rindt's remarks were less provocative than the officer's pointed rejoinder in *Bond*. Rindt's comments were clear in meaning, plain in form, and not designed to elicit a response from the defendant. *Bond* therefore does not govern the present case.

¶ 63. The defendant also rests on *Hill v. United States*, 858 A.2d 435 (D.C. Cir. 2004). While in custody, Hill asked a detective whether Hill's friend, whom police had also taken into custody, was locked up.[69] The detective answered, "No, but let me tell you he told us what happened."[70] The court of appeals concluded that the detective's answer amounted to an interrogation. It explained that "[t]he statement, 'he told us what happened,' was not responsive to [Hill's] preceding question asking whether [his friend] had been detained"[71] and that "the unresponsive and postured nature of [the detective's] words is suggestive of a purposeful design likely to elicit an incriminating response."[72]

¶ 64. The *Hill* court considered the context in which the conversations took place to be significant. The detective had admonished his colleagues not to advise Hill of his *Miranda* rights and then had left Hill "incommunicado, handcuffed to a chair in an interview room for approximately three and one-half hours ...."[73] The court of appeals determined that these actions "underscore[d] [a] plan to intimidate [Hill] by purposely withholding the advisement of rights meant to counteract the pressure inherent in custodial interroga-

[69] *Hill v. United States*, 858 A.2d 435, 440 (D.C. Cir. 2004).
[70] *Id.*
[71] *Id.* at 443–44, 447.
[72] *Id.* at 443.
[73] *Id.* at 447.

tion . . . ."[74] When the detective finally returned to speak with Hill, the detective also "combine[d] classic interrogation techniques" by first establishing authority, then confronting the suspect with evidence against him, and finally "creat[ing] a verbal vacuum (ten to fifteen seconds of silence) in which the first person to break the silence constitutes the losing party."[75] The detective entered the room, telling Hill, "I'm running the show and you are going to be charged with murder II."[76] Under these circumstances the *Hill* court concluded that "the seemingly benign transmittal of information to [Hill] . . . resembles the kind of mental games that largely generated the *Miranda* decision itself."[77]

¶ 65. Hill is significantly different from the present case. Rindt's comment to the defendant was responsive to the defendant's statement. The record does not demonstrate that Rindt's reply was a planned interrogation strategy like the one considered in *Hill*.

¶ 66. For the reasons set forth, we conclude that Rindt's words and conduct did not constitute interrogation; Rindt did not engage in express questioning or the functional equivalent of express questioning after the defendant effectively invoked his Fifth Amendment *Miranda* right to counsel. Rindt's statement would not be viewed by an objective observer as the type of comment that would encourage the defendant to make some incriminating remark. A reasonably objective observer could not foresee that Rindt's conduct and words would elicit an incriminating response from the defendant.

[74] *Id.*

[75] *Id.* at 444.

[76] *Id.*

[77] *Id.* at 447.

## IV

¶ 67. Even after a suspect in custody asks to speak with a lawyer, thereby requiring that "all interrogation must cease until a lawyer is present,"[78] a suspect may waive his or her Fifth Amendment *Miranda* right to counsel.[79]

·¶ 68. In order to establish that a suspect has validly waived the Fifth Amendment *Miranda* right to counsel after effectively invoking it, the State must meet two criteria:

¶ 69. (A) First, the State has the burden to show as a preliminary matter that the suspect "initiate[d] further communication, exchanges, or conversations with the police."[80] This criterion does not go to the validity of the suspect's purported waiver but instead is "in effect a prophylactic rule, designed to protect an accused in police custody from being badgered by police officers . . . ."[81]

¶ 70. (B) Second, the State has the burden to show that the suspect waived the right to counsel

---

[78] *Innis,* 446 U.S. at 293 (citing *Miranda,* 384 U.S. at 474).

[79] *Edwards v. Arizona,* 451 U.S. 477, 485 (1981).

[80] *Id.*

[81] *Oregon v. Bradshaw,* 462 U.S. 1039, 1044 (1983). Eight justices agreed with this statement of the first criterion.

*See also Bradshaw,* 462 U.S. at 1045 (explaining that whether a suspect initiated further discussion and whether the suspect validly waived her *Miranda* rights are separate inquiries and that "clarity of application is not gained by melding them together").

"voluntarily, knowingly and intelligently."[82] That is, the waiver "of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."[83]

¶ 71. The standard of review on the questions whether the defendant initiated further communication with Rindt and whether the defendant voluntarily, knowingly, and intelligently waived his Fifth Amendment *Miranda* right to counsel is as follows: This court will uphold a circuit court's findings of historical or evidentiary fact unless they are clearly erroneous.

---

[82] *Miranda,* 384 U.S. at 444. The Bradshaw Court phrases the test as whether a waiver is "knowing and intelligent," omitting the word "voluntary." *Bradshaw,* 462 U.S. at 1046 (quoting *Edwards,* 451 U.S. at 486 n.9). The Court appears to have made this omission simply because the defendant in *Bradshaw* did not allege that the waiver was not voluntary. We of course do not read the omission to alter the rule announced in *Miranda.*

The defendant's brief sometimes articulates the test as whether a suspect "knowingly and intelligently" waived his or her rights but at other times uses the phrase "voluntarily and intelligently." The circuit court also used different phrases. Both the defendant and the circuit court seem to be discussing a single test, only phrasing it differently at different points in the discussion.

[83] *Edwards,* 451 U.S. at 482. *See also State v. Turner,* 136 Wis. 2d 333, 347, 401 N.W.2d 827 (1987) (quoting *Edwards,* 451 U.S. at 481) ("An accused waives the right to counsel when there is a voluntary, 'knowing, and intelligent relinquishment or abandonment of a known right or privilege.' "); *State v. Kramar,* 149 Wis. 2d 767, 790, 440 N.W.2d 317 (1989) (citing *Turner*).

This court determines the application of legal and constitutional principles to those evidentiary facts independently of the circuit court and court of appeals but benefits from the circuit court's and court of appeals' analyses.[84]

## A

¶ 72. The defendant asserts that the State has not shown that he initiated a discussion or conversation with Rindt.

¶ 73. Tests for determining whether a suspect initiated a discussion or conversation with law enforcement officers were set forth in *Oregon v. Bradshaw,* 462 U.S. 1039 (1983). The four-justice *Bradshaw* plurality concluded that a suspect's "inquiries or statements . . . relating to routine incidents of the custodial relationship" would not be sufficient to constitute "initiation," but that questions or statements that under the totality of circumstances "evinced a willingness and a desire for a generalized discussion about the investigation" would.[85]

¶ 74. The four-justice *Bradshaw* dissent supplied its own competing test, arguing that when the "Court in *Edwards* spoke of 'initiat[ing] further communication' with the police and 'reopen[ing] the dialogue with the

---

[84] Jennings, 252 Wis. 2d 228, ¶ 20.

*See Turner,* 136 Wis. 2d at 343–49 (discussing the standard of review for questions of constitutional fact and implicitly applying this standard both to the question whether a suspect had initiated further communication with police and to the question whether the suspect knowingly and intelligently waived the *Miranda* right to counsel).

[85] *Bradshaw,* 462 U.S. at 1045–46.

authorities,' it obviously had in mind communication or dialogue *about the subject matter of the criminal investigation.*"[86]

¶ 75. Thus uncertainty persists about what constitutes a suspect's "initiating" further communication with law enforcement. We are free to choose either the plurality's or the dissent's test. We need not make the choice in the present case. Our analysis and conclusion in the present case would not differ under either the plurality's or dissent's statement of the test for a suspect's "initiation" of further communication or dialogue.[87]

¶ 76. The defendant asserts that for a suspect to "initiate" communication or dialogue there must be a break between the suspect's invocation of the right to counsel and the subsequent communication by the suspect to law enforcement that led to the inculpatory statements. According to the defendant, the dialogue that Rindt had initiated with the defendant had never ceased and no break in the dialogue occurred between

---

[86] *Id.* at 1053 (Marshall, J., dissenting) (emphasis and alterations in original).

The ninth *Bradshaw* justice rejected the two-step approach and deemed the confession admissible because there was a knowing and intelligent waiver by Bradshaw of his rights. *Bradshaw,* 462 U.S. at 1049 (Powell, J., concurring).

[87] *See State v. Chew,* 695 A.2d 1301, 1318 (N.J. 1997) ("We have acknowledged that these are 'separate tests,' but have not flatly chosen one or the other [citation omitted]. We perceive little difference between the tests . . . .").

For a discussion of the *Bradshaw* case, see 2 LaFave et al., *supra* note 14, § 6.9(f) at 849 (concluding that "an objective assessment of the circumstances in [*Bradshaw*] would seem to justify only one conclusion . . . . [The suspect's] question would not amount to 'initiation' under either of the tests. . . . ").

the defendant's invocation of the right to counsel and the defendant's comment that supposedly initiated further communication.

¶ 77. Whether a suspect "initiates" communication or dialogue does not depend solely on the time elapsing between the invocation of the right to counsel and the suspect's beginning an exchange with law enforcement, although the lapse of time is a factor to consider.

¶ 78. The facts in *Oregon v. Bradshaw,* 462 U.S. 1039, 1044 (1983), are instructive on the question whether the defendant in the present case "initiated" further communication with Rindt.

¶ 79. Bradshaw inquired of a police officer, "[e]ither just before, or during," a trip from the police station to jail, "Well, what is going to happen to me now?"[88] The *Bradshaw* plurality observed that in posing this question, Bradshaw " 'initiated' further communication in the ordinary dictionary sense of that word."[89]

¶ 80. The plurality opinion recognized, however, that the fact that Bradshaw initiated further communication in the ordinary dictionary sense was insufficient to establish that he "initiated" further communication evincing a willingness for a generalized discussion about the investigation. The plurality opinion acknowledged that some initial statements may be "so routine that they cannot be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation."[90]

---

[88] *Bradshaw,* 462 U.S. at 1042 (1983).

[89] *Id.* at 1045.

[90] *Id.*

¶ 81. The plurality opinion concluded that Bradshaw had "initiated" communication under the circumstances of the case. Bradshaw's ambiguous question could have been interpreted by the officer as relating generally to the investigation. That the officer so understood the question is apparent from the fact that the officer immediately reminded Bradshaw that he did not have to talk to the officer. Bradshaw said he understood and then they conversed.[91] The Court concluded that Bradshaw's "question . . . as to what was going to happen to him evinced a willingness and a desire for a generalized discussion about the investigation" and "was not merely a necessary inquiry arising out of the incidents of the custodial relationship."[92]

¶ 82. In contrast to Bradshaw's ambiguous question about what was going to happen to him, the defendant's statement here that he did not understand why he was under arrest was clearly seeking information and constituted an initiation of communication with Rindt in the most ordinary sense of the word. The defendant's statement did not merely relate "to routine incidents of the custodial relationship."[93] The context of the defendant's statement supports the conclusion that the statement evinced a willingness and a desire for a generalized discussion about the investigation.

¶ 83. The cases the defendant cites do not persuade us otherwise. The defendant's reliance on *United States v. Gomez,* 927 F.2d 1530 (11th Cir. 1991), is

---

[91] *Id.* at 1045–46.

[92] *Id.*

[93] *See id.* at 1045. As examples of inquiries related to routine incidents of the custodial relationship, the *Bradshaw* plurality suggests "a request for a drink of water or a request to use a telephone." *Id.*

139

misplaced. Gomez was arrested and requested counsel. A federal agent then told Gomez that he faced 10 years to life in prison and that cooperation might give him a lighter sentence. Minutes later Gomez asked the federal agent why he had been arrested. After the federal agent explained the reason for arrest, Gomez asked to speak to someone about cooperating.

¶ 84. The *Gomez* court held that the federal agent's initiation of conversation with Gomez after Gomez invoked his Fifth Amendment *Miranda* right to counsel was likely to elicit an incriminating response and constituted interrogation. That Gomez began conversation with the agent a few moments later about his arrest did not cure the agent's initiation of interrogation after a valid Fifth Amendment *Miranda* invocation of the right to counsel.[94] *Gomez* thus stands for the proposition that once police illegally interrogate a suspect contrary to *Miranda* and *Edwards,* "no claim that the accused 'initiated' more conversation will be heard."[95] *Gomez* presents very different facts from the present case.

¶ 85. The defendant also errs in relying on *McDougal v. State,* 591 S.E.2d 788 (Ga. 2004). After having invoked his right to counsel while in custody, 90 minutes later McDougal, sitting in a jail cell, sent word to detectives that he wished to see them.[96]

¶ 86. In asking to see the detectives, McDougal had not indicated a waiver of his previously invoked right to counsel or the reason he was seeking out the detectives. The court concluded that there was "no

---

[94] *See United States v. Gomez,* 927 F.2d 1530, 1538–39 (11th Cir. 1991).

[95] *Id.* at 1539.

[96] *McDougal v. State,* 591 S.E.2d 788, 794 (Ga. 2004).

indication that [McDougal] . . . intended to initiate the conversation by engaging in a 'generalized discussion about the investigation.' "[97] Indeed, wrote the court, it was possible "that McDougal intended to inquire about when he would be allowed to contact his wife or an attorney, which he had not yet been permitted to do, or when he could see his daughter, which the police had promised to arrange during the initial interview."[98]

¶ 87. Before McDougal could speak, the detective confronted McDougal, stating that the person whom McDougal had implicated as a shooter had a strong alibi.

¶ 88. The *McDougal* court held that the detective's statement constituted interrogation, that McDougal had not "reinitiated" communication with law enforcement by his mere request to see the detective, and that McDougal's statements were responses to police interrogation after McDougal effectively invoked his Fifth Amendment *Miranda* right to counsel.

¶ 89. In contrast to *McDougal,* in the present case, after the defendant invoked his Fifth Amendment *Miranda* right to counsel, the detective did not make any provocative statements about the arrest or the crime. Rather, the defendant began an exchange with Rindt with a comment to which the detective made a straightforward response. Under the totality of the circumstances in the present case the defendant's comment evinced a willingness and a desire for a generalized discussion.

¶ 90. For the reasons set forth, we conclude that the defendant "initiated" further communication with Rindt.

---

[97] *Id.* (quoting *Bradshaw,* 462 U.S. at 1046).
[98] *Id.* at 794–95.

B

¶ 91. We now consider whether the defendant voluntarily, knowingly, and intelligently waived his Fifth Amendment *Miranda* right to counsel. A *Miranda* waiver is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception."[99] For a *Miranda* waiver to be knowing and intelligent, it "must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."[100] Resolving the waiver question requires a case-by-case examination of all the facts and circumstances, including the suspect's background, experience, and conduct.[101]

¶ 92. A circuit court's determination of the waiver of *Miranda* rights is reviewed as follows: A circuit court's findings of historical or evidentiary fact will not be disturbed unless clearly erroneous. This court determines the application of constitutional principles to those evidentiary facts independently of the circuit court and court of appeals but benefiting from their analyses.[102]

¶ 93. The defendant summarizes his argument that he did not voluntarily, knowingly, and intelligently waive his right to counsel, stating that at the time of his

---

[99] *Moran v. Burbine,* 475 U.S. 412, 421 (1986).

[100] *State v. Santiago,* 206 Wis. 2d 3, 18–19, 556 N.W.2d 687 (1996) (quoting *Moran,* 475 U.S. at 421).

[101] *Turner,* 136 Wis. 2d at 348 (citing *Edwards,* 451 U.S. at 482).

[102] *Santiago,* 206 Wis. 2d at 17.

arrest, he was hungry, alone in the back seat of a squad car, handcuffed, and young and limited in intelligence and sophistication.

¶ 94. This argument is not compelling on the facts of the present case. The defendant was an adult at the time of his arrest. While he casts himself as limited in intelligence and sophistication (and the circuit court acknowledged the defendant's apparent limited intelligence and understanding), the defendant does not claim to be incompetent to exercise or waive his legal rights. Although Detectives Rindt and Clausing did arrest the defendant before he had a chance to eat his breakfast, the defendant does not seem to claim that hunger had somehow deprived him of the ability to make decisions knowingly and intelligently. The defendant was undoubtedly uncomfortable and scared. Most people arrested on suspicion of delivering cocaine would probably be uncomfortable and scared.

¶ 95. The circuit court found that "there was no indication that he was deprived of sleep or intoxicated or that anything in his general physical and emotional condition, as objectively viewed, made him unusually susceptible. He had substantial previous experience with the police (although at the juvenile level)." The circuit court observed that the time in custody and the length of the interrogation were relatively short. The circuit court explained that the defendant was being questioned and interviewed with respect to possible cooperation. According to the circuit court, no threats or promises were made except those relating to possible cooperation. The defendant's claim that Rindt "subtly coerced" the defendant when he rewarded the defendant's decision to speak by removing the hand-cuffs and putting him in the front seat of the squad car

143

does not challenge the circuit court's finding. The circuit court's findings of fact are not clearly erroneous.

¶ 96. More pertinent is the defendant's allegation that either Detective Rindt or Detective Clausing told the defendant that it was not necessary for him to obtain legal assistance. The defendant asserts that the law enforcement officer's comment came when the detectives were trying to get him to talk to them prior to his arrest and prior to the defendant's effectively invoking his Fifth Amendment *Miranda* right to counsel. According to the circuit court's decision, Detective Rindt did not seem to recall this give and take, and the circuit court made no finding specific to the alleged exchange between the defendant and Rindt.

¶ 97. The circuit court made clear that, as a general matter, it found the defendant's "version [of the arrest] . . . full of internal inconsistencies and self-serving statements" and that it "bolsters the State's case." The circuit court also characterized the law enforcement officer's testimony as demonstrating a " 'convenient' " lack of memory as to certain key issues" and characterized the memory lapses as "certainly troubling." The circuit court found, however, that because Rindt was no longer employed by the sheriff's department, he had "no motivation to fabricate."[103]

---

[103] Circuit court decision, Brief and Appendix of Defendant-Appellant-Petitioner at App. 117. The circuit court commented at sentencing that the State's witness "seemed to remember very well the things that protected the State's interest and then [had an] utter lack of memory as to virtually any other detail. It was very bizarre. Not very credible." The circuit court also viewed the police practices here as "not professional" and stated that the officers "created the offense" to get the defendant to give them some names.

¶ 98. The circuit court's findings and analysis establish that under the totality of the circumstances the defendant's waiver of his right to counsel after he was given the *Miranda* warnings was voluntary, knowing, and intelligent.

¶ 99. We agree with the defendant that a court should be wary of viewing a suspect's every statement or question as an invitation to interrogation. A suspect's invocation of the right to counsel should be meticulously honored and should not be set aside lightly. We conclude, however, that in the present case the defendant "initiated" communication with the law enforcement officer after the defendant had invoked his Fifth Amendment *Miranda* right to counsel and that the waiver of the right to counsel was voluntary, knowing, and intelligent.

\* \* \* \*

¶ 100. For the reasons set forth, we conclude as follows:

(1) The defendant effectively invoked his Fifth Amendment *Miranda* right to counsel when he requested counsel while he was in custody and before the law enforcement officer interrogated him under both a standard requiring only that a suspect be in custody when the request for counsel is made and a standard requiring that interrogation be "imminent or impending when the request for counsel is made." An invocation of the Fifth Amendment *Miranda* right to counsel is a request for the assistance of an attorney in dealing with custodial interrogation by the police.

(2) The law enforcement officer's statements to the defendant after he effectively invoked his Fifth Amend-

ment *Miranda* right to counsel and before he was given the *Miranda* warnings did not constitute interrogation by the officer.

(3) After the defendant effectively invoked his Fifth Amendment *Miranda* right to counsel, he initiated communication with the law enforcement officer and then voluntarily, knowingly, and intelligently waived his right to counsel, rendering the inculpatory statements admissible.

¶ 101. The court is divided on the question whether to adopt a temporal standard to determine whether a suspect in custody has effectively invoked his or her Fifth Amendment *Miranda* right to counsel. Three justices, Justices Prosser, Roggensack, and Butler, adopt the standard that a suspect may effectively invoke the Fifth Amendment *Miranda* right to counsel when a suspect is in custody and has made "an unequivocal request to speak with an attorney" even before interrogation is imminent or impending.

¶ 102. Three justices, Justices Bradley and Crooks and the author of this opinion, conclude that they need not, and do not, address whether the appropriate temporal standard to adopt is the "anytime in custody" standard or the "imminent or impending interrogation" standard. Justice Ziegler did not participate in this case.

¶ 103. Accordingly, we affirm the decision of the court of appeals affirming the circuit court's order refusing to suppress the defendant's inculpatory statements and affirming the conviction.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 104. ANNETTE KINGSLAND ZIEGLER, J., did not participate.

146

¶ 105. PATIENCE DRAKE ROGGENSACK, J. (*concurring*). Although I agree that the court of appeals decision should be affirmed because Hambly's statements were given after he had invoked and then waived his Fifth Amendment right to counsel,[1] I write separately for two reasons: (1) a test that the lead opinion establishes to invoke the Fifth Amendment right to counsel is contrary to the requirements of *Miranda v. Arizona*, 384 U.S. 436 (1966); and (2) that test, i.e., that "a suspect may effectively invoke his or her Fifth Amendment *Miranda* right to counsel by requesting counsel when a reasonable person in the suspect's position would believe that interrogation is imminent,"[2] blurs *Miranda*'s bright-line rule that law enforcement is to follow in fulfilling its obligations to a suspect who is in custody and unequivocally asks to see a lawyer.

## I. BACKGROUND

¶ 106. Scott Hambly requested the assistance of counsel after he was arrested, handcuffed and led to a squad car for transport to jail. There is no question that he was in custody when he asked to see a lawyer before speaking to law enforcement any further. However, instead of simply concluding that Hambly effectively invoked his Fifth Amendment right to counsel because he was in custody and had made an unequivocal request to speak with an attorney, the lead opinion creates a test wherein "a suspect may effectively invoke his or her Fifth Amendment *Miranda* right to counsel by requesting counsel when a reasonable person in the suspect's

---

[1] I refer to an in-custody request for counsel invoked to protect the Fifth Amendment's right against compelled self-incrimination as the Fifth Amendment right to counsel.

[2] Lead op., ¶ 29.

position would believe that interrogation is imminent."[3] The majority opinion remarks that another "possible standard" is that any time a suspect is in custody and unequivocally requests counsel, even before *Miranda* warnings, the suspect invokes his or her Fifth Amendment right to counsel.[4] In my view, this alternative standard is not a "possible standard." It is *the* standard required by *Miranda.* Simply stated, any time a suspect is in custody, whether before or after *Miranda* warnings are given, whether before or after questioning is imminent or impending, an unambiguous request for counsel is always effective to invoke a suspect's Fifth Amendment right to counsel.[5]

## II. DISCUSSION

### A. Standard of Review

¶ 107. The facts before us are undisputed. With undisputed facts, we independently review whether a suspect has effectively invoked his right to counsel, as a question of constitutional fact. *State v. Jennings,* 2002 WI 44, ¶ 20, 252 Wis. 2d 228, 647 N.W.2d 142.

### B. Conditions on Timeliness of Invocation

#### 1. Conflict with *Miranda*

¶ 108. The lead opinion sets out restrictions on the timeliness of a suspect's invocation of his or her

---

[3] *Id.*

[4] *Id.,* ¶ 30.

[5] In my view, the court of appeals correctly applied *Miranda v. Arizona,* 384 U.S. 436 (1966), in *State v. Collins,* 122 Wis. 2d 320, 363 N.W.2d 229 (Ct. App. 1984), when it concluded that Collins "invoked his right to counsel while at his home, immediately upon being arrested." *Id.* at 328.

Fifth Amendment right to counsel that I conclude are inconsistent with the United States Supreme Court's decision in *Miranda*.[6]

¶ 109. The right to counsel pursuant to the Fifth Amendment was first described in *Miranda*. There, the United States Supreme Court reviewed statements obtained from Miranda, who was subjected to custodial police interrogation. The Court examined the procedures that it concluded would be necessary to accord Miranda his Fifth Amendment privilege[7] against compelled self-incrimination. *Miranda*, 384 U.S. at 439. The Court concluded that this Fifth Amendment privilege could be protected only when the suspect "is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.' " *Id.* at 460 (quoting *Malloy v. Hogan*, 378 U.S. 1, 8 (1964)).

¶ 110. In order to "guarantee" the Fifth Amendment right to remain silent, the Court in *Miranda* reasoned that the consequences that could follow custodial interrogation must be explained to a defendant before any questioning could commence. *Id.* at 471. It also determined that only by according a suspect the opportunity to request the assistance of counsel could the intimidating atmosphere of custodial interrogation conform to the Fifth Amendment privilege against compelled self-incrimination. *Id.* at 466. In so concluding, the Court relied on an earlier decision, *Escobedo v. Illinois*, 378 U.S. 478 (1964). *Miranda*, 384 U.S. at 464–66.

¶ 111. *Escobedo* is relevant to the case before us for at least two reasons: (1) the request for counsel in

---

[6] Lead op., ¶ 29.

[7] The Fifth Amendment of the United States Constitution provides in relevant part: "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."

*Escobedo* was made *before* questioning was begun, *before* indictment, but *after* Escobedo was in custody, *Escobedo,* 378 U.S. at 479, 485;[8] and (2) *Miranda* relied on the constitutional concerns expressed in *Escobedo* for the development of the Fifth Amendment right to counsel, *Miranda,* 384 U.S. at 464–66.

¶ 112. Escobedo was arrested and taken into custody as a suspect in a homicide case. *Escobedo,* 378 U.S. at 479. When the arresting officer told Escobedo that "they had us pretty well, up pretty tight, and we might as well admit to this crime," Escobedo said, "I am sorry but I would like to have advice from my lawyer." *Id.* However, no lawyer was provided until after Escobedo had incriminated himself. *Id.* Based on his request, the Supreme Court concluded that Escobedo had been denied his Sixth Amendment right to counsel. *Id.* at 490–91.

¶ 113. *Escobedo's* reasoning underlies *Miranda's* establishment of the Fifth Amendment right to counsel. *Miranda,* 384 U.S. at 464–66. The same concerns about the vulnerability of a defendant in custodial interrogation underlie both *Miranda* and *Escobedo. Escobedo* used the Sixth Amendment to accord Escobedo the right to counsel because the Supreme Court had not yet

[8] The lead opinion states that Escobedo's request for counsel came during, not before, police interrogation. Lead op., ¶ 22 n.14. While, as the lead opinion points out, *Rhode Island v. Innis,* 446 U.S. 291 (1980), established that statements, as well as questions, may constitute police interrogation, this view of interrogation was not contemplated by the *Escobedo* decision because *Escobedo* antedated the *Innis* decision by 16 years. Therefore, according to the way in which the Supreme Court defined "interrogation" at the time *Escobedo* was decided, interrogation had not yet commenced when Escobedo first requested counsel.

established a Fifth Amendment right to counsel in order to protect the Fifth Amendment's proscription against compelled self-incrimination. However, there was no hint that Escobedo's invocation of the right to counsel was premature because he exercised it when he was being taken to the police station, rather than when questioning was about to begin. As the Court explained:

> [W]here . . . the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied "the Assistance of Counsel" in violation of the Sixth Amendment to the Constitution as "made obligatory upon the States by the Fourteenth Amendment," . . . and that no statement elicited by the police during the interrogation may be used against him at a criminal trial.

*Escobedo,* 378 U.S. at 490–91 (quoted citations omitted).

¶ 114. The protections accorded to Escobedo were clear and unambiguous. That clarity was echoed in *Miranda* where the Fifth Amendment right to counsel was first explained as being necessary to protect a suspect's Fifth Amendment right to remain silent. The Court stated, "Our holding . . . is this: The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda,* 384 U.S. at 444. The Court went on to explain that prior to any questioning, a defendant must be warned that he has the right to remain silent; that any statement he makes

151

may be used against him; and that he has the right to have an attorney present during the time that he is questioned. *Id.*

¶ 115. The requirements *Miranda* outlined formed a bright-line rule. It was not conditioned on the qualities of the individual suspect who was then the subject of a police investigation. As the Court in *Miranda* explained:

> The Fifth Amendment privilege is so fundamental to our system of constitutional rule and the expedient of giving an adequate warning as to the availability of the privilege so simple, we will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given. *Assessments of the knowledge the defendant possessed, based on information as to his age, education, intelligence, or prior contact with authorities, can never be more than speculation.*

*Id.* at 468–69 (emphasis added).

¶ 116. *Smith v. Illinois,* 469 U.S. 91 (1984), supports my conclusion about the requirements of *Miranda.* In *Smith,* the State attempted to cast doubt on the validity of Smith's post-custody, pre-arrest request for counsel through his responses to questioning after he requested counsel. *Id.* at 92–93. In overturning Smith's conviction, the Supreme Court concluded:

> An accused in custody, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him," unless he validly waives his earlier request for the assistance of counsel.

*Id.* at 94–95 (quoting *Edwards v. Arizona,* 451 U.S. 477, 484–85 (1981)). The Supreme Court in *Smith* then described the requirement for counsel as a " 'rigid'

prophylactic rule" necessary to prevent compelled self-incrimination. *Id.* at 95. The Supreme Court permitted no further condition on Smith's in-custody request for counsel. It was effective when made and must be honored. *Id.* at 94–95. This is consistent with my view that an unequivocal request for counsel made while in custody effectively invokes the Fifth Amendment right to counsel.

¶ 117. The lead opinion places conditions on a suspect's request for counsel by establishing a time before which the invocation of the Fifth Amendment right to counsel may not be effective. The lead opinion asserts that it is possible that invocation may not be effective until "a reasonable person in the suspect's position would [have] believe[d] that interrogation [was] imminent."[9] Conditioning the right to counsel as the lead opinion has done is contrary to the express statement in *Miranda:* "An individual need not make *a pre-interrogation request for a lawyer. While such request affirmatively secures his right to have one,* his failure to ask for a lawyer does not constitute a waiver." *Id.* at 470 (emphasis added). Accordingly, I conclude that the lead opinion's conditions on the timeliness of an invocation of the Fifth Amendment right to counsel is in direct conflict with *Miranda* and is therefore an impermissible interpretation of the rights accorded under the Fifth Amendment of the United States Constitution.

2. Blurring *Miranda's* bright-line rule

¶ 118. It is beyond dispute that *Miranda* attempted to "give concrete constitutional guidelines for law enforcement agencies and courts to follow." *Arizona*

---

[9] Lead op., ¶ 29.

*v. Roberson,* 486 U.S. 675, 680 (1988) (quoting *Miranda,* 384 U.S. at 441–42). As the Supreme Court has "stressed on numerous occasions, '[o]ne of the principal advantages' of *Miranda* is the ease and clarity of its application." *Id.* (citations omitted). The requirements of *Miranda* are a prophylactic to ward off violations of a suspect's constitutional right to remain silent. *McNeil v. Wisconsin,* 501 U.S. 171, 176 (1991). Factors that condition the use of a prophylactic necessarily undermine its effectiveness. Statements in our opinions that are contrary to what the Supreme Court has instructed inject uncertainty into the law.[10]

¶ 119. In addition, I do not know how a "reasonable person in the suspect's position" would know that "interrogation is imminent."[11] Do the prior personal experiences of the suspect affect that test? Does his or her age, education or intelligence inform whether he or she would believe that "interrogation is imminent or impending"? *Miranda* teaches that such conditions are mere speculation and have no place in assuring that constitutional guarantees will be protected. *Miranda,* 384 U.S. at 468–69.

¶ 120. The teaching of *Miranda* is simple: once a suspect is in custody and makes an unequivocal request to speak with a lawyer, he or she has effectively invoked the Fifth Amendment right to counsel for the purpose of responding to police questioning. Nothing more or less is needed. A test that the lead opinion

---

[10] In my view, the conditions the lead opinion adds onto the way in which *Miranda* chose to protect the Fifth Amendment's right to remain silent provide no benefit for the State, for suspects in custody or for law enforcement. They simply add uncertainty to what the Supreme Court expected would be clear.

[11] Lead op., ¶ 29.

suggests blurs the bright-line rule that *Miranda* provides. In addition, that test will be difficult to apply, thereby generating occasions when a suspect who is in custody and unequivocally asks for a lawyer will be denied that assistance by law enforcement who may rightly believe that questioning is not "imminent or impending."

¶ 121. Accordingly, because I cannot join the conditions the lead opinion would permit to be placed on the constitutional right against compelled self-incrimination, I respectfully concur.

¶ 122. I am authorized to state that Justice DAVID T. PROSSER joins in this concurrence and that Justice LOUIS B. BUTLER, JR. joins in this concurrence, with the exception of its discussion of *Escobedo v. Illinois,* 378 U.S. 478 (1964).

¶ 123. LOUIS B. BUTLER, JR., J. (*concurring*). I join Justice Roggensack's concurring opinion, with the exception of its discussion of *Escobedo v. Illinois,* 378 U.S. 478 (1964). While *Escobedo* has, to date, never been overturned, the United State Supreme Court has since adopted the rule set forth in *Miranda v. Arizona,* 384 U.S. 436 (1966), with respect to custodial interrogation. As it is not necessary to rely upon *Escobedo* now to reach the correct result, I would not bring it into the discussion. In all other respects, I join Justice Roggensack's concurrence.