**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph B. KELSEY, Defendant–
Appellant.**

**No. 90–4200.**

United States Court of Appeals,
Tenth Circuit.

Dec. 20, 1991.

fifty percent useful life mark is similarly disap- proved.

Stephen R. McCaughey, Salt Lake City, Utah, for defendant-appellant.

Dee Benson, U.S. Atty. and Richard D. Parry, Asst. U.S. Atty., for plaintiff-appellee.

Before McKAY, Chief Judge, SEYMOUR and EBEL, Circuit Judges.

SEYMOUR, Circuit Judge.

Joseph B. Kelsey was convicted of three counts of possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1) (1988),[1] and one count of carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c) (1988). Kelsey was sentenced to concurrent sentences of twenty-one months on the possession counts and a consecutive sentence of sixty months on the firearm count, followed by thirty-six months of supervised release.

All of the counts arose from Kelsey's conduct on October 18, 1989. Prior to trial, Kelsey moved to suppress incriminating statements he had given to law enforcement officials following the search of his home and his arrest on October 18. The court denied the motion, ruling that the police interrogation of Kelsey complied with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The statements were introduced at trial, and Kelsey was convicted. In this appeal, Kelsey contends only that his incriminating statements were compelled in violation of his Fifth Amendment right against self-incrimination. The Government argues that his interrogation was not constitutionally defective. We reverse.

The material facts disclosed at the suppression hearing are essentially undisputed.[2] The search of Kelsey's home on Octo-

---

1. After the jury returned a verdict of guilty on all three possession counts, one count was dismissed on the Government's motion.

2. After Kelsey testified at the suppression hearing and before the Government could put on evidence, the district court interrupted and held:

"there's sufficient compliance with the Miranda ruling, and I deny the motion to suppress the use of the confession." Rec., vol. II, at 20. Consequently, we have no underlying fact findings by the court.

ber 18 was conducted by members of a police narcotics strike force, many of whom wore masks. Kelsey arrived at his home while the search was in progress. He was searched before entering his house, found in possession of cocaine, arrested and handcuffed. After being taken into custody, Kelsey was brought into the house and told to sit on the couch, along with his girlfriend and two other women all of whom were also under arrest. The police continued to search the house.

Shortly after he sat down and while he was "still trying to get over the initial shock," rec., vol. II, at 4, Kelsey asked to see his lawyer three or four times. The police responded that if they "allow[ed] him to see [his] lawyer now, then they would not be able to ask [him] any further questions and would have to take [him] to jail." *Id.* Kelsey answered that he did not want to go to jail. The police also told him that "if [he] was to cooperate and talk with the officers, then they'd take it easy on [him], or something of that nature." *Id.* at 5. The police did not question Kelsey at this point and did not read him his *Miranda* warnings until much later. Eventually, one of the officers asked Kelsey if he wanted to talk to the police. He agreed and was questioned in another room. At some point during this interrogation, Kelsey was given *Miranda* warnings and asked if he wanted to continue the conversation. He said he would on the condition that the other people in the house were released. Kelsey was at his home about an hour to an hour and a half before he was taken to jail. During that time he made numerous incriminating statements.

## I.

 In *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981), the Supreme Court established a bright-line rule that when a suspect has "expressed his desire to deal with the police only through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates* further communication, ex-

changes, or conversations with the police." (Emphasis added). To implement this rule, the Court held that any statements a suspect makes after requesting an attorney and before being provided with one are not admissible unless it is clear that the suspect, and not the police, initiated the dialogue with authorities. *Id.* at 485–87, 101 S.Ct. at 1885–86. In reiterating and applying this rule, the Supreme Court has stated:

> "Thus, the prophylactic protections that the *Miranda* warnings provide to counteract the 'inherently compelling pressures' of custodial interrogation and to 'permit a full opportunity to exercise the privilege against self-incrimination,' are implemented by the application of the *Edwards* corollary that if a suspect believes that he is not capable of undergoing such questioning without advice of counsel, then it is presumed that any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the 'inherently compelling pressures' and not the purely voluntary choice of the suspect."

*Arizona v. Roberson,* 486 U.S. 675, 681, 108 S.Ct. 2093, 2097–98, 100 L.Ed.2d 704 (1988) (citation omitted). The undisputed facts in the case before us fulfill the two criteria for applying the *Edwards* brightline rule: Kelsey invoked his right to deal with the police through an attorney, and the police initiated questioning after Kelsey had requested a lawyer and before he had been provided one.

 In an effort to avoid *Edwards,* the Government argues that this case is distinguishable because Kelsey requested counsel before the police began to question him and before he was read his *Miranda* rights. In support of this argument, the Government cites *Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980), for the proposition that the *Miranda* safeguards do not come into play until a suspect is subjected to interrogation or its functional equiva-

lent.[3] Under the governing cases, however, the fact that Kelsey invoked his right to counsel before the police were required to inform him of that right is irrelevant. The Supreme Court has stated that the rule in *Edwards* is triggered by "some statement that can reasonably be construed to be expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police.*" *McNeil v. Wisconsin,* — U.S. —, 111 S.Ct. 2204, 2209, 115 L.Ed.2d 158 (1991). It is clear from the exchange between Kelsey and the police described above that the police intended to question Kelsey at some point at his home, and that the police understood Kelsey to be invoking his right to counsel during questioning. Recognizing the import of Kelsey's request, the police stated that if they allowed him to see his lawyer they could not question him further. We thus conclude that Kelsey's request for counsel was sufficient to bring this case within the ambit of *Edwards.*

In so holding, we point out that when a suspect requests counsel, a presumption arises "that he considers himself unable to deal with the pressures of custodial interrogation without legal assistance." *Roberson,* 486 U.S. at 683, 108 S.Ct. at 2099. "This discomfort is precisely the state of mind that *Edwards* presumes to persist unless the suspect himself initiates further conversation...." *Id.* at 684, 108 S.Ct. at 2099. Thus the Court considers *Edwards* the means of protecting a suspect's right against self-incrimination in an inherently coercive situation. "[T]o a suspect who has indicated his inability to cope with the pressures of custodial interrogation by requesting counsel, any further interrogation without counsel having been provided will surely exacerbate whatever compulsion to speak the suspect may be feeling." *Id.* at 686, 108 S.Ct. at 2100. The Court has accordingly rejected the argument that

"fresh sets of *Miranda* warnings will 're-assure' a suspect who has been denied the counsel he has clearly requested that his rights have remained untrammeled." *Id.*

The case before us illustrates precisely the type of coercive atmosphere that generates the need for application of the *Edwards* rule. Kelsey came home to find his house being searched by a police strike force, including masked officers. He was arrested and handcuffed along with three women whom he described as shaking and upset. His requests for an attorney were met with the option of being taken to jail and with offers of easier treatment if he cooperated and talked with the police. After holding Kelsey for some period of time without allowing him to talk to his lawyer, the police initiated uncounselled discussion with him. Kelsey agreed on the condition that the three women being held would be released. Under *Edwards,* these circumstances require that the resulting incriminating statements be suppressed.[4]

█ We find no merit in the Government's argument that *Edwards* should not apply because the officers to whom Kelsey made his request for counsel were not the officers who later questioned him. This argument has been rejected by both the Supreme Court and this circuit. *See Roberson,* 486 U.S. at 687–88, 108 S.Ct. at 2101–02; *United States v. Scalf,* 708 F.2d 1540, 1544 (10th Cir.1983) ("once a suspect has invoked the right to counsel, knowledge of that request is imputed to all law enforcement officers who subsequently deal with the suspect").

█ Finally, we reject the Government's argument that Kelsey waived his *Miranda* rights. Once a suspect has stated his desire for counsel, "a valid waiver of that right cannot be established by showing only that [the suspect] responded to fur-

---

**3.** There can be no doubt but that Kelsey was interrogated after requesting an attorney. The questioning of Kelsey was certainly "words or actions on the part of the police that they should have known were reasonably likely to elicit an incriminating response." 446 U.S. at 303, 100 S.Ct. at 1691.

**4.** The Government points out that Kelsey admitted on cross-examination that the police did not yell at him or make threats. However, Kelsey also testified that the atmosphere was "very tense," that his "girlfriend was shaking like crazy," and that "both the other girls [were] visibly upset." Rec., vol. II, at 9.

ther police-initiated custodial interrogation even if he has been advised of his rights." *Edwards,* 451 U.S. at 484, 101 S.Ct. at 1885.

> "If the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards."

*McNeil,* 111 S.Ct. at 2208.

In sum, we conclude that *Edwards* is applicable to this case and that the incriminating statements Kelsey gave on October 18, 1989, should therefore have been suppressed. Accordingly, the conviction is REVERSED. The case is REMANDED to the district court for further proceedings consistent with this opinion.