KELLY, Circuit Judge.
The government appeals from an order of the district court granting Defendants Appellee Manuel Santistevan’s motion to suppress statements made after invoking the right to counsel. Mr. Santistevan was indicted on three counts of interference with commerce by robbery, 18 U.S.C. §§ 1951, 2, and using and carrying a dangerous weapon during the commission of a violent crime, 18 U.S.C. §§ 924(c), 2; possession of a firearm by a previously convicted felon, 18 U.S.C. § 922(g)(1); and possession of a short-barreled shotgun, 26 U.S.C. § 5861(d). The district court held that Mr. Santistevan unambiguously invoked the right to counsel when he gave an agent of the Federal Bureau of Investigation (“FBI”) a letter from his attorney indicating that he did not wish to speak without counsel. Because the agent continued to interrogate Mr. Santistevan, the district court suppressed the incriminating statements that Mr. Santistevan subsequently made. We have jurisdiction pursuant to 18 U.S.C. § 3731, and we affirm.

Background

In the summer of 2007, the FBI was investigating a series of robberies in the Denver area. Aplt. App. 133-34. Mr. Santistevan became a suspect in these robberies, and FBI Agent Eicher (“agent”) obtained a warrant for his arrest. Id. at 137. On August 30, 2007, Mr. Santistevan turned himself in on other, unrelated charges that were pending in Jefferson County, Colorado. Id. at 141-42. The agent went to the police department to meet with Mr. Santistevan, advised him of his Miranda rights, and asked if he wanted to speak about the robberies. Id. at 141. Mr. Santistevan declined, and the interview ended. Id.
Six days later, on September 5, 2007, the agent received a phone call from Mr. Santistevan’s girlfriend, Tiffani Bryan. Id. at 142. The agent knew of Ms. Bryan because he had previously interviewed her about the robberies. Id. Ms. Bryan told the agent that Mr. Santistevan wanted to speak with him, and asked if he could meet Mr. Santistevan at the jail that night. Id. at 142-43. The agent could hear Ms. Bryan speaking to someone else on another phone line, and believed that this person was Mr. Santistevan. Id. Because it was late at night, he told Ms. Bryan that he would visit Mr. Santistevan the next morning. Id. at 143.
*1291 The following morning, while traveling to the jail, the agent received a phone call from Katherine Spengler, a public defender (“attorney”). Id. at 144-45. The attorney advised him that she represented Mr. Santistevan, had spoken with him that morning, and that he did not wish to speak. Id. The agent informed the attorney of his conversation with Ms. Bryan the previous night and indicated that he intended to visit Mr. Santistevan to “ask him directly if he wanted to make any statements or answer my questions.” Id. at 145. The attorney responded that she had given Mr. Santistevan a letter to give to the agent if he went to the jail. Id.
When the agent arrived at the jail, he told Mr. Santistevan that he had spoken to an attorney who claimed to represent him and asked if he had a letter. Id. at 145— 46. Mr. Santistevan handed him the following letter:
9/6/2007
Agent Icker [sic]:
My name is Katherine Spengler. We spoke last week. I have been in touch with Sue Fisher from the Federal Public Defender’s Office. At this point, Mr. Santistevan does not wish to speak with you without counsel. However, he is not foreclosing that option in the future. I am sorry you have wasted your time. I do have some questions for you. Please contact me at (303) 279-7841, ext. 1375.
Sincerely,
Katherine Spengler
Department of the State Public Defender [1]
Id. at 114. The agent read, photocopied, and returned the letter to Mr. Santistevan.
Id. at 146. He then initiated the following conversation:
Agent: You have been advised by an attorney not to talk to me today, but it’s totally up to you on whether you want to talk to me or not. Do you want to come back to my office and answer questions about these robberies?
Mr. Santistevan: Yes.
Agent: Are you sure, without a lawyer present?
Mr. Santistevan: Yes, I want to.
Id. As a result, he brought Mr. Santistevan to the FBI offices. Id.
Upon arrival, the agent placed Mr. Santistevan in an interview room and turned on the video recorder.[2] Id. at 148. He first allowed Mr. Santistevan to spend one hour with Ms. Bryan and his mother. Id. Then, before beginning the interview, he had Mr. Santistevan review a Miranda rights form. Id. at 150. Mr. Santistevan read the form out loud, stated that he understood his rights, and signed the waiver. Id. at 151-52. Over the next three hours, Mr. Santistevan made incriminating statements with respect to two robberies. Id. at 158. Thereafter, the government filed an indictment on March 11, 2008, and a superceding indictment on November 3, 2010. Id. at 3,14-20.
On January 26, 2011, Mr. Santistevan filed a motion to suppress statements made during the interview. Id. at 23-24. The district court held an evidentiary hearing at which the agent testified. Id. at 130-90. The court ordered supplemental briefing on new issues that were raised by the evidence. Id. at 12-13. In his supplemental brief, Mr. Santistevan ar *1292 gued that the agent violated his Miranda rights in three ways: (1) by questioning him after he invoked his right to silence at the time of his arrest; (2) by questioning him after his attorney told the agent that he did not wish to speak; and (3) by continuing to question him after he handed the agent a letter stating that he did not wish to be questioned without an attorney present. Id. at 101-11. The district court rejected Mr. Santistevan’s first two arguments, but agreed with the third. Specifically, the district court found that (1) through his girlfriend, Mr. Santistevan had reinitiated contact with the agent after previously invoking his right to silence; (2) the attorney’s phone call to the agent did not invoke Mr. Santistevan’s Miranda rights; and (3) Mr. Santistevan unambiguously invoked the right to counsel by handing the letter to the agent. Id. at 112-29. The court also determined that Mr. Santistevan was subject to a custodial interrogation when he invoked the right to counsel, and that the later waiver of his Miranda rights was invalid. Id. at 124-25.

Discussion

On appeal, the government raises two arguments: (1) Mr. Santistevan did not unequivocally invoke the right to counsel by handing the letter drafted by his attorney to the agent; and (2) Mr. Santistevan was not in custody when he handed the letter to the agent. Aplt. Open. Br. 9-11. On its second point, the government requests that we remand to the district court to more fully develop the record. Id. at 11.
Upon review of an order granting a motion to suppress, we accept the district court’s factual findings unless clearly erroneous, viewing the evidence in the light most favorable to the district court. United States v. Cook, 599 F.3d 1208, 1213 (10th Cir.2010). We review factual findings regarding the words a defendant used to invoke the right to counsel for clear error. United States v. Brown, 287 F.3d 965, 971 (10th Cir.2002). “Whether those words actually invoked the right to counsel is a legal determination, reviewed de novo.” Id. (citation and quotation marks omitted).
In Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court established a bright-line rule that when a suspect has “expressed his desire to deal with the police only through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available,” unless he initiates the contact. The Court revisited Edwards in Davis v. United States, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), and clarified that a “suspect must unambiguously request counsel.” The Court explained that “this is an objective inquiry[;]” a suspect “must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.” Id. Absent this “level of clarity, Edwards does not require that the officers stop questioning the suspect.” Id. However, when the statement is clear, all questioning must stop; this bright-line rule “preserve[s] the integrity of an accused’s choice to communicate with police only through counsel, by preventing police from badgering a defendant into waiving his previously asserted Miranda rights.” Maryland v. Shatzer, 559 U.S. 98, 130 S.Ct. 1213, 1220, 175 L.Ed.2d 1045 (2010) (citations and internal quotation marks omitted).
The district court made two factual findings that are relevant to our inquiry. First, the court found that the text of the letter “could not be any clearer; it stated ‘Mr. Santistevan does not wish to speak *1293 with you without counsel.’ ” Aplt. App. 126. We agree with the district court, and find this language to be the “level of clarity” that Davis requires. See Davis, 512 U.S. at 459, 114 S.Ct. 2350. Second, the district court found that Mr. Santistevan “simply handed the letter” to the agent, and “by so doing ratified the contents of that letter as his own personal communication to the [a]gent.” Aplt. App. 127. Reviewing for clear error, we do not believe that the district court clearly erred in reaching this conclusion. Like the district court, we find it relevant that Mr. Santistevan did not “dissociate[ ] himself from the contents of the letter.... [or] volunteer[ ] that despite the statement in the letter, he did, in fact, wish to be questioned.” Id. at 126. As a result, we agree that Mr. Santistevan’s act of handing the letter drafted by his attorney to the agent was an unambiguous invocation of the right to counsel.
The government urges us to reach a different conclusion by emphasizing that (1) Mr. Santistevan only presented the letter to the agent after being asked for it, and (2) Mr. Santistevan never asserted that he agreed with the contents of the letter. Aplt. Open. Br. 15. We are not persuaded. First, we find it irrelevant that the agent asked for the letter. At the suppression hearing, the agent testified that “[w]hen [he] arrived at the jail — [he] asked if [Mr. Santistevan] had a letter____” Aplt. App. 145-46. Mr. Santistevan did not forfeit his right to counsel just because the agent happened to speak first. Second, we do not believe that the Edwards bright-line rule places an additional burden on the suspect to specifically clarify that he intends to invoke the right to counsel. Rather, once the suspect unambiguously invokes the right to counsel— as Mr. Santistevan did here by giving the letter to the agent — all questioning must stop.
We also find the government’s reference to Moran v. Burbine, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), unpersuasive. See Aplt. Reply Br. 4. In Burbine, the Supreme Court explained that only a defendant, and not an attorney, can invoke a defendant’s Fifth Amendment rights. 475 U.S. at 433 n. 4, 106 S.Ct. 1135. However, we do not find Burbine dispositive because, in this case, the attorney did not just tell the agent that Mr. Santistevan did not wish to speak.[3] Rather, Mr. Santistevan himself told the agent that he did not wish to speak when he gave the letter to the agent and adopted its contents. Again, this clear act invoked Mr. Santistevan’s right to counsel.
In the alternative, the government argues that, even if Mr. Santistevan invoked the right to counsel, the invocation was at best equivocal because Mr. Santistevan had requested to meet with the agent the previous night.[4] Aplt. Open. Br. 15. In support of this argument, the government cites our decision in Brown, 287 F.3d at 972-73, where we found that a defendant did not unequivocally invoke the right to counsel when he stated simultaneously that he wanted to. answer questions without a lawyer present, wanted a lawyer, and *1294 wanted to talk to a lawyer. Aplt. Open. Br. 15-16 (emphasis added). Yet, the government’s own choice of the word “simultaneously” is telling. Unlike the defendant in Brown, Mr. Santistevan did not simultaneously convey contradictory intentions. Rather, in giving the letter to the agent, his message was clear — he did not wish to speak without counsel present. Whatever discrepancy there may have been between Mr. Santistevan’s intentions the previous night and that morning, this situation is a far cry from a defendant’s ambiguity within the same sentence. Cf. Valdez v. Ward, 219 F.3d 1222, 1232 (10th Cir.2000) (on habeas review, finding ‘Tes, I understand it a little bit and I sign it because I understand it something about a lawyer and he want to ask me questions and that’s what I’m looking for a lawyer” equivocal). We thus conclude • that Mr. Santistevan unambiguously invoked the right to counsel when he gave the letter drafted by his attorney to the agent.-
In so holding, we note that it would be unfair to penalize Mr. Santistevan for changing his mind about speaking with the agent. It is well settled that a defendant, who has previously invoked the right to counsel, may change his mind and speak with police so long as the defendant “(a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked.” Smith v. Illinois, 469 U.S. 91, 95, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984) (citing Edwards, 451 U.S. at 485, 486 n. 9, 101 S.Ct. 1880); see United States v. Johnson, 42 F.3d 1312, 1318 (10th Cir.1994) (finding that a defendant waived his Fifth Amendment right to silence after reinitiating conversation with the police); United States v. Comosona, 848 F.2d 1110, 1113 (10th Cir.1988) (same). If a defendant can change his mind to speak with police, it is only fair to allow him to do the opposite.
The government also challenges the district court’s finding that Mr. Santistevan was subject to a custodial interrogation. Here, the government asks that we remand to more fully develop the record. We disagree that a remand is necessary. Instead, we find that Mr. Santistevan was subject to a custodial interrogation. The “Mirandar-Edwards right to counsel prophylaxis” requires “both a custodial situation and official interrogation.” United States v. Bautista, 145 F.3d 1140, 1147 (10th Cir.1998). Like the district court, we find our decision in United States v. Kelsey, 951 F.2d 1196 (10th Cir.1991), instructive. In Kelsey, the defendant, who had just been arrested, requested counsel before the police began to question him and before he was read his Miranda rights. Id. at 1198. Nonetheless, we found that the defendant was subject to a custodial interrogation because “the police intended to question [the defendant] at some point” in the near future. Id. at 1199. Here, Mr. Santistevan, who was also under arrest and in fact held in custody, knew that the agent was there to ask him questions. Therefore, interrogation was imminent, Mr. Santistevan could properly invoke his right to counsel, and to reiterate, he did so in an unequivocal manner when he handed the letter drafted by his attorney to the agent.
The dissent suggests that Mr. Santistevan’s act of handing over the letter while remaining silent, in light of the agent’s questioning, “created an ambiguity.” According to the dissent, Mr. Santistevan then needed to do more — or specifically, say more — to invoke his Miranda rights. This “no” means “maybe” approach is a recipe for ambiguity in every case and places too high a burden on a defendant to invoke counsel. The suggestion that a defendant -must then explain his effort to invoke counsel at a suppression hearing *1295 compounds the problem. The government has the burden of proof and it is difficult to imagine competent defense counsel advising a client to testify in such circumstances, even given possible application of Rule 104(d). All that is required is that a defendant make an unambiguous request, sufficiently clear that a reasonable police officer understands it to be a request for counsel. Davis, 512 U.S. at 459, 114 S.Ct. 2350. It does not require that a defendant, once making this invocation, further clarify his intentions.
The dissent also warns that our holding instructs law enforcement officers on how to get around Miranda by teaching them what questions to ask when they know a defendant has a letter from counsel. We would like to think that law enforcement officers act in good faith. Here the agent was plainly aware of the position of counsel and client. Regardless, it is our responsibility to apply the teachings of the Supreme Court given the facts before us.
AFFIRMED. The government’s motion to withdraw its prior motion to correct its reply brief is GRANTED.

. The actual letter was not admitted into evidence at the suppression hearing. We include the letter as the district court did in its opinion, only correcting the spelling of attorney Spengler's name.

. We reviewed the video, but find its contents irrelevant to our analysis.

. The district court found that the attorney’s phone call to the agent did not invoke Mr. Santistevan's right to counsel. Aplt. App. 120-122. Because we find that Mr. Santistevan himself invoked the right to counsel, we need not address this point.

. We note that Ms. Bryan, and not Mr. Santistevan, spoke with the agent. The district court found that this conversation reinitiated contact for Mr. Santistevan. Aplt. App. 117-20. Because we find that Mr. Santistevan’s later act — handing the letter to the agent— invoked the right to counsel, we need not reach this point and express no opinion on the dissent’s view of it.