# Illinois Official Reports

## Appellate Court

---

### *People v. Williams*, 2021 IL App (3d) 180282

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GABRIEL R. WILLIAMS, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-18-0282 |
| Filed | June 7, 2021 |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 15-CF-340; the Hon. Cynthia M. Raccuglia, Judge, presiding. |
| Judgment | Judgment reversed; convictions vacated.<br>Cause remanded. |
| Counsel on Appeal | Matthew J. Mueller, of Cortina, Mueller & Frobish, P.C., of Morris, for appellant.<br><br>Karen Donnelly, State's Attorney, of Ottawa (Patrick Delfino and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel                    PRESIDING JUSTICE McDADE delivered the judgment of the court, with opinion.
Justice O'Brien concurred in the judgment and opinion.
Justice Schmidt dissented, with opinion.

## OPINION

¶ 1    Defendant, Gabriel R. Williams, appeals from his convictions for armed robbery and unlawful possession of a weapon by a felon. He argues that the La Salle County circuit court erred when it denied his motion to suppress statements. We reverse the ruling on the motion to suppress, vacate defendant's convictions, and remand for further proceedings.

¶ 2                              I. BACKGROUND

¶ 3    The State charged defendant with armed robbery (720 ILCS 5/18-2(a)(2) (West 2014)), aggravated robbery (*id.* § 18-1(b)(1)), and unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)). Defendant filed a motion to suppress statements he made to police while in custody. The motion alleged that defendant's statements should be suppressed because the investigators continued to interrogate him after he invoked his right to counsel.

¶ 4    At the hearing on defendant's motion, Officer Barry Baxter of the Ottawa Police Department testified that he encountered defendant walking on the street on December 12, 2015. Baxter knew defendant to be a suspect in an armed robbery committed the night before. Baxter performed a pat-down search, then asked defendant if he would be willing to come to the police department. Baxter testified that defendant "was not willing to come down on his own." Baxter then informed defendant that he was a suspect in the armed robbery.

¶ 5    Defense counsel and Baxter then engaged in the following exchange regarding defendant's request for an attorney:

"Q. *** Did [defendant] ever mention something about his attorney?

A. Yes.

Q. Do you remember what exactly you remember him saying about his attorney?

A. He told me that he might have to talk to his attorney.

Q. Okay. Do you remember if it was he might have to talk to his attorney or he would have to talk to his attorney?

A. I believe it was something along the line of maybe I should talk to my attorney ***."

Defense counsel, producing a copy of Baxter's report of the encounter, continued:

"Q. *** In your police report you had said [defendant] said something about how he would have to speak to his attorney about the matter as he was already going to court over an unlawful violation of an order of protection charge; is that accurate?

A. Yes.

Q. Now, I assume by the fact that in your report you said he said something about, you don't remember the exact words that were used?

A. I don't remember the exact details."

- 2 -

¶ 6 After this conversation with defendant, Baxter "took [defendant] in to custody" and transported him to the Ottawa police station. Defense counsel asked Baxter if Baxter told any other officers that defendant "had mentioned having his attorney present." Baxter responded: "Well, he never did mention having his attorney present. He mentioned that maybe he should talk to his attorney." Baxter added that he told defendant "[h]e could speak to the other officers and let them know if he wanted his attorney present."

¶ 7 On cross-examination, Baxter agreed that defendant "never told [him] specifically I need to talk to my lawyer."

¶ 8 On redirect examination, Baxter reiterated that his reported observation that defendant "said something about how he would have to speak to his attorney about this matter" was accurate.

¶ 9 Detective Kevin Reynolds of the Ottawa Police Department interviewed defendant after Baxter transported him to the police station. Nothing was relayed to Reynolds relating to defendant's prior mention of an attorney. Reynolds brought defendant into an interrogation room. A video recording of the interrogation was submitted into evidence and played in open court.

¶ 10 The video recording shows defendant being brought into an interrogation room and provided with a paper apparently containing written *Miranda* warnings (see *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). Reynolds enters and reads the *Miranda* warnings. Defendant indicates that he understands the warnings and has no questions, then signs the paper. Reynolds begins the interrogation by asking defendant about his possible participation in a robbery. Throughout nine minutes of questioning, Reynolds assures defendant there is evidence that he committed the offense but declines to tell defendant what that evidence is. Defendant then tells Reynolds that he wants to speak with an attorney. Reynolds ceases questioning and exits the interrogation room.

¶ 11 After a few moments, defendant, speaking through the partially open door, states that he wanted to see proof that he was at the scene of the armed robbery, then begins discussing the case with Reynolds. Reynolds reenters the room and asks defendant to be clear whether he wanted an attorney; defendant responds that he knew he had an attorney but said that he wanted to talk. Reynolds repeats that defendant was entitled to speak to an attorney, and defendant insists that he wants to talk. Reynolds begins questioning defendant, and defendant ultimately makes an incriminating statement.

¶ 12 Defendant next testified on his own behalf. He testified that, when Baxter approached him on the street, "I told him I would have to speak to my attorney." He emphasized that this was a "[w]ord for word" recitation of what he told Baxter.

¶ 13 Following the parties' arguments, the court denied defendant's motion to suppress. In so ruling, the court stated as follows:

"You know, there was an intervening factor here. This is an unusual situation. I've never had one like it, but I've read a lot of cases that have had it, and now here I am with the situation. Intervening factors do make a difference, and in looking at the video I don't see it so unequivocal with one officer that I mean the video starts with Mr.— he's actually looking at the statements of rights by himself so he knows what is going to happen there and then you have Officer Reynolds going through it with him, and

- 3 -

[defendant], it's clear to me that anything that could have been interpreted as unequivocal wasn't by his actions in that room at that particular time.

I'm glad to see that when he said to them I want the attorney, that was unequivocal, I saw that as unequivocal, that they left. They started to leave because I have not had that much recently. I've had to rule the other way, but [defendant] did beg them to come back, and knowing [defendant] he knew exactly what—I mean he's a very bright, young man, and he wanted to talk to them. It's clear to me so any admissions that he may have made I find the right to lawyer was waived by his intervening acts with these officers."

¶ 14    Defendant subsequently filed a motion to reconsider. Following a hearing, the court denied that motion as well, without further comment.

¶ 15    The cause proceeded to a bench trial. Following the trial, the court found defendant guilty of armed robbery and unlawful possession of a weapon by a felon. The court found defendant not guilty of aggravated robbery. The presentence investigation report (PSI) showed that defendant had graduated from high school and attended community college for two semesters. The PSI also showed that defendant had prior criminal convictions for traffic offenses, as well as battery and burglary. The court sentenced defendant to 30 years' imprisonment for armed robbery and a concurrent 10-year term for unlawful possession of a weapon by a felon.

¶ 16                                    II. ANALYSIS

¶ 17    On appeal, defendant contends that the circuit court erred when it denied his motion to suppress his statements. Specifically, he argues that he unequivocally invoked his right to counsel when first confronted by Baxter, such that Reynolds's subsequent interrogation was a violation of that right.

¶ 18                                          A

¶ 19    We review a circuit court's ruling on a motion to suppress under a two-part standard. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). Under this standard, we give deference to the circuit court's findings of historical fact, reversing those findings only where they are contrary to the manifest weight of the evidence. *People v. Cosby*, 231 Ill. 2d 262, 271 (2008). However, we review *de novo* the court's ultimate legal ruling as to whether suppression is warranted. *Id.*

¶ 20    In *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981), the United States Supreme Court held that a defendant who has "expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." In *Smith v. Illinois*, 469 U.S. 91, 98 (1984) (*per curiam*), the Court explained that

> "*Edwards* set forth a 'bright-line rule' that *all* questioning must cease after an accused requests counsel. *Solem v. Stumes*, 465 U.S. 638, 646 (1984). In the absence of such a bright-line prohibition, the authorities through 'badger[ing]' or 'overreaching'—explicit or subtle, deliberate or unintentional—might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for

counsel's assistance. *Oregon v. Bradshaw*, 462 U.S. 1039, 1044 (1983); *Fare v. Michael C.*, 442 U.S. [707,] 719 [1979]." (Emphasis in original.)

Furthermore, it is well settled that, where a defendant directs a request for counsel to one police officer, the knowledge of that request is imputed to all other officers. *E.g.*, *People v. Warner*, 146 Ill. App. 3d 370, 378-79 (1986) (collecting cases). "To hold otherwise could make it possible to nullify an accused's request for the assistance of counsel by the expedient of transferring his custody for questioning to an officer who would be unaware of the request for an attorney." *People v. Blanchard*, 37 Ill. 2d 69, 73 (1967).

¶ 21    Of course, the bright-line *Edwards* rule applies only where a defendant has *actually* invoked his right to counsel. *Smith*, 469 U.S. at 96. A defendant's request for counsel is sufficient where a reasonable police officer in those circumstances would understand defendant's statement as a request for an attorney. *Davis v. United States*, 512 U.S. 452, 459 (1994). Where, on the other hand, a defendant's comments are ambiguous or equivocal, such that a reasonable officer "would have understood only that the suspect *might* be invoking the right to counsel," questioning of that defendant may continue. (Emphasis in original.) *Id.*

¶ 22    Accordingly, we begin our analysis by considering whether defendant unequivocally and unambiguously requested his attorney during his initial street encounter with Baxter. Defendant testified that he told Baxter he "would have to speak to [his] attorney" and that this was a "word for word" recitation of his request. Meanwhile, Baxter's testimony on defendant's request was varied. He testified first that defendant said he "might" need to speak with his attorney. Baxter next testified that he "believe[d] it was something along the lines of maybe I should talk to my attorney." Baxter also agreed that his report indicated that defendant said he "would have to speak to his attorney." Baxter stood by the accuracy of his report.

¶ 23    Whether defendant told Baxter he had to or would have to speak with his attorney, or told him that he would "maybe" or "might" need to speak with his attorney, is a question of historical fact. The circuit court, however, made no factual finding on this particular point. Nor did it, more generally, make a finding of credibility with respect to Baxter or defendant. In fact, the court's comments (*supra* ¶ 13) were focused exclusively on the interrogation room video, with no mention of defendant's encounter with Baxter. Because of this oversight, we are not even able to infer any sort of factual finding based on the court's ultimate ruling.

¶ 24    In an effort to remedy this error, this court retained jurisdiction while ordering a limited remand so that the circuit court could enter the necessary factual findings. Seven months later, the circuit court entered a handwritten order stating: "The Court makes findings dealing with the question posed by the appellate court and the record shall stand for the findings and order of the Court." Notably, this handwritten order did not contain the factual finding requested by this court. The circuit court has declined to actually provide any record of its purported findings.

¶ 25    Further dealings with the circuit court, in an attempt to finally procure its factual findings, are unnecessary. Defendant's testimony was unequivocal[1] and was in fact supported by Baxter's police report, as well as Baxter's testimony standing by the accuracy of that report. Baxter's testimony was internally contradictory and riddled with equivocation as well as an

---

[1]We note that the State, in its brief, considers only Baxter's testimony that defendant said he "maybe" or "might" want to speak with his attorney. It ignores completely Baxter's report, Baxter's testimony standing by his report, and defendant's testimony.

express admission that he did not "remember the exact details" of defendant's statement. On these facts, any potential finding that Baxter was more credible, or that defendant stated he "might" or "maybe" needed to speak to his attorney, would be contrary to the manifest weight of the evidence. See *People v. Urdiales*, 225 Ill. 2d 354, 433 (2007) ("[A] judgment is against the manifest weight of the evidence when an opposite conclusion is apparent.").

¶ 26 Defendant's statement to Baxter that he "would have to speak to [his] attorney" was an unambiguous, unequivocal invocation of his right to counsel. No reasonable officer could construe such a statement as anything less. Baxter's knowledge that defendant had invoked his right to counsel is imputed to other officers, including Reynolds. See *Warner*, 146 Ill. App. 3d at 378-79. Accordingly, the officers were obligated to stop questioning defendant until his attorney was present. *Smith*, 469 U.S. at 98 ("Where nothing about the request for counsel or the circumstances leading up to the request would render it ambiguous, all questioning must cease."). The violation of the bright-line rule set forth in *Edwards* requires that defendant's subsequent statements to police be suppressed. *Edwards*, 451 U.S. at 485.

¶ 27 That defendant eventually requested to speak with Reynolds without an attorney—some nine minutes into the interrogation but before making any incriminating statements—has no impact on our analysis. As explained above, "[t]he *Edwards* rule serves the prophylactic purpose of preventing officers from badgering a suspect into waiving his previously asserted" right to counsel. See *Davis*, 512 U.S. at 452. After a defendant asserts his right to counsel, *all* questioning must cease. *Smith*, 469 U.S. at 98. Police officers are not entitled to nine minutes— or one minute—of further interrogation in hopes that a defendant will rescind his request for counsel.

¶ 28                                                    B

¶ 29 The dissent does not disagree with our factual determination (*supra* ¶ 24), nor does it dispute that defendant's comment to Baxter amounted to an unequivocal invocation of his right to counsel (*supra* ¶ 26). Rather, the dissent asserts that defendant's request for counsel was of no import because defendant was not yet in custody when that request was made. In raising this point, the dissent relies primarily upon *People v. Villalobos*, 193 Ill. 2d 229, 241-42 (2000), in which our supreme court stated: "In order to invoke the *Miranda* right to counsel, an individual must be both in custody and subject to interrogation or under imminent threat of interrogation." Reasoning that defendant was not in custody during the portion of his encounter with Baxter in which he requested his attorney, the dissent concludes that defendant's request was nothing more than an "anticipatory invocation" of his right to counsel.

¶ 30 While relying heavily on the excerpt from *Villalobos* quoted above, the dissent ignores other language from the same case. Namely, our supreme court declared that "[T]he suspect must invoke the right to counsel during custodial interrogation *or when custodial interrogation was imminent*." (Emphasis added.) *Id.* at 241. In the instant case, there is no question that, when defendant was approached by Baxter on the street, his custodial interrogation was imminent. Defendant initially declined Baxter's request to come to the police station voluntarily for questioning. Baxter then informed defendant that he was a suspect in an armed robbery. Defendant requested his attorney, at which point he was taken into custody. Baxter testified that he then transported defendant to the police station, where he was interrogated by Reynolds. It is abundantly clear that the interaction with Baxter was only going to end with defendant's interrogation at the police station. Once defendant declined to come voluntarily,

his custodial interrogation was inevitable. Because custodial interrogation was imminent when defendant unequivocally requested counsel, the officers were prohibited from interrogating defendant until counsel had been provided. See *id.*; *Edwards*, 451 U.S. at 484-85.

¶ 31 To be sure, the two excerpts from *Villalobos* in discussion here are at odds with one another. The passage relied upon by the dissent (*supra* ¶ 29) implies that the element of actual custody is mandatory, while it is sufficient if the interrogation is merely "imminent." The second passage—"when custodial interrogation was imminent"—would apply the "imminent" modifier to both elements of custodial interrogation, such that an invocation of the right to counsel is valid even where both custody and interrogation are only "imminent." This conflicting language played no role in the *Villalobos* decision; the defendant in that case attempted to invoke his right to counsel by filing a form at his bond hearing, two days before his actual interrogation on an unrelated charge. *Villalobos*, 193 Ill. 2d at 230-31. The defendant was undoubtedly in custody, but his interrogation was not imminent. *Id.* at 240. Here, however, the conflicting language in *Villalobos* is particularly relevant, because while defendant was not in custody at the time of invocation, his custodial interrogation was plainly imminent.

¶ 32 Both formulations of the rule appear regularly in case law. *E.g.*, *United States v. Rambo*, 365 F.3d 906, 909 (10th Cir. 2004) ("For the protections of *Miranda* to apply, custodial interrogation must be imminent or presently occurring."); *Sapp v. State*, 690 So. 2d 581, 583 (Fla. 1997) (invocation "not effective because custodial interrogation had not begun when he signed the form, nor was it imminent at the time"); *United States v. Toepfer*, 317 F. App'x 857, 861 (11th Cir. 2008) ("The Fifth Amendment right to counsel may be invoked only during custodial interrogation or when such interrogation is imminent ***."); *United States v. Grimes*, 142 F.3d 1342, 1348 (11th Cir. 1998) ("*Miranda* rights may be invoked only during custodial interrogation or when interrogation is imminent."); *United States v. Bautista*, 145 F.3d 1140, 1147 n.3 (10th Cir. 1998) ("Thus, 'custodial interrogation' includes those instances where a defendant is in custody and it is clear that questioning/interrogation is imminent."). Some cases, like *Villalobos*, employ the two standards interchangeably. *E.g.*, *United States v. Cash*, 733 F.3d 1264, 1276-77 (10th Cir. 2013) ("For *Miranda*'s protections to apply, custodial interrogation must be imminent or presently occurring. [Citation.] *Miranda* is therefore only applicable when (1) the suspect is in custody, and (2) any questioning *** meet[s] the legal definition of interrogation." (Internal quotation marks omitted.)). Much less common is a decision that requires a court to differentiate between the two standards. But see *State v. Lonkoski*, 2013 WI 30, ¶ 38, 828 N.W.2d 552 (declining to adopt "imminent custody" rule because "the coerciveness is substantially lessened because a reasonable person in the suspect's position would believe that he [or she] could end the conversation and leave at any time").

¶ 33 In *McNeil v. Wisconsin*, 501 U.S. 171, 173, 178-79 (1991), the United States Supreme Court held that a defendant's mere appearance in court with an attorney did not amount to an invocation of his right to counsel such that *Edwards* barred future interrogations. The Court emphasized that proper invocation of the *Edwards-Miranda* protections "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police*." (Emphasis in original.) *Id.* at 178. In a footnote, the *McNeil* Court added:

> "Most rights must be asserted when the government seeks to take the action they protect against. The fact that we have allowed the *Miranda* right to counsel, once asserted, to

be effective with respect to future custodial interrogation does not necessarily mean that we will allow it to be asserted initially outside the context of custodial interrogation, with similar future effect." *Id.* at 182 n.3.

¶ 34 The concept of imminence was introduced into the analysis in *United States v. Kelsey*, 951 F.2d 1196 (10th Cir. 1991), and *North Carolina v. Torres*, 412 S.E.2d 20 (N.C. 1992). In *Kelsey*, the defendant was sitting on his couch while officers conducted a search of his home, when he requested counsel. *Kelsey*, 951 F.2d at 1198. The circuit court found that the defendant's request comported with *McNeil*:

"It is clear from the exchange between Kelsey and the police described above that the police intended to question Kelsey at some point at his home, and that the police understood Kelsey to be invoking his right to counsel during questioning. *** We thus conclude that Kelsey's request for counsel was sufficient to bring this case within the ambit of *Edwards*." *Id.* at 1199.

Similarly, the defendant in *Torres* inquired about an attorney while "awaiting questioning" at the sheriff's office. *Torres*, 412 S.E.2d at 21. The North Carolina Supreme Court rejected the State's argument that the invocation was invalid because the defendant had not yet been subjected to actual questioning, stating: "It would make little sense to require a defendant already in custody to wait until the onset of questioning or the recitation of her *Miranda* rights before being permitted to invoke her right to counsel." *Id.* at 26.

¶ 35 The rationales in *Kelsey*, *Torres*, and the myriad other cases dealing with imminent interrogation apply with equal force to the imminent custody at issue in the present case. After stopping defendant on the street, Baxter informed him that he was a suspect in an armed robbery and was wanted for questioning. Both defendant and Baxter surely knew that a custodial interrogation was imminent. Indeed, when defendant declined Baxter's invitation to come to the police station voluntarily, he was placed in custody to be brought in for questioning. In that context, defendant's request cannot be construed as some vague or open-ended request for counsel at an undefined time. It was plainly "an expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police*" in the immediate moment. (Emphasis in original.) *McNeil*, 501 U.S. at 178.

¶ 36 Furthermore, it would make especially little sense to allow an officer in Baxter's position to ignore defendant's request for counsel when the same request, had it been made *mere moments later*, would have afforded defendant constitutional protections. Such a rule would be ripe with potential for abuse, as it would allow police unfettered discretion to interrogate suspects who know they are about to be taken into custody—even in the face of repeated requests for counsel—right up until the point of formalizing custody.

¶ 37 More importantly, such a rule would be a substantial extension of the bar on anticipatory invocations of *Miranda*. Almost exclusively, cases finding *Miranda* inapplicable due to an anticipatory invocation concern requests for counsel that are significantly removed in time, place, or topic from the custodial interrogation that is ultimately challenged. For instance, the invocation rejected in *Villalobos* was made at the defendant's bond hearing in an unrelated case two days before the interrogation. *Villalobos*, 193 Ill. 2d at 241-42. Similarly, the rejected invocation in *McNeil* was made while in court for an unrelated case. *McNeil*, 501 U.S. at 173; see also *Alston v. Redman*, 34 F.3d 1237, 1240-41 (3d Cir. 1994) (rejecting as anticipatory invocation a letter from the defendant imprisoned on other charges, requesting that he not be questioned without counsel, signed two days before interrogation in question); *United States*

*v. Wright*, 962 F.2d 953, 954 (9th Cir. 1992) (rejecting as anticipatory invocation a request made by counsel at the guilty plea hearing that defendant not be questioned without counsel, where interrogation in question, on unrelated charges, occurred 15 days later).

¶ 38   The instant case is simply different in kind from the standard anticipatory invocation case. Defendant requested counsel after having been informed that he was a suspect in an armed robbery, the very offense he would later be interrogated on. His request was not made in court or in a letter, but directly to a police officer. Any time between defendant's request for counsel and his interrogation would be measured not in days or weeks but in hours. Finally, defendant's was not a blanket request to be represented at any and all future interrogations; rather, it was a request for counsel at the specific armed robbery custodial interrogation that he knew to be imminent. Where, as here, custodial interrogation is imminent, an unequivocal request for counsel must trigger the protections of *Miranda* and *Edwards*.

¶ 39   Accordingly, we reverse the circuit court's judgment denying defendant's motion to suppress statements. We vacate defendant's convictions and remand the matter for further proceedings. See *People v. Augusta*, 2019 IL App (3d) 170309, ¶ 23.

¶ 40                                III. CONCLUSION

¶ 41   The judgment of the circuit court of La Salle County is reversed, defendant's convictions are vacated, and the matter is remanded for further proceedings.

¶ 42   Judgment reversed; convictions vacated.

¶ 43   Cause remanded.

¶ 44   JUSTICE SCHMIDT, dissenting:

¶ 45   In finding that defendant's invocation of the right to counsel was unambiguous, the majority fails to analyze a threshold legal issue required to establish an effective invocation of the right. In this instance, a thorough application of the law to the facts results in the conclusion that the lower court did not err in its denial of the motion to suppress. For that reason, I respectfully dissent.

¶ 46   We may affirm the lower court's ruling on defendant's motion to suppress on any basis apparent from the record. *People v. Buss*, 187 Ill. 2d 144, 205 (1999). Defendant bears the burden of persuasion on a motion to suppress. *People v. Cregan*, 2014 IL 113600, ¶ 23. "In order to invoke the *Miranda* right to counsel, an individual must be both in custody and subject to interrogation or under imminent threat of interrogation." *Villalobos*, 193 Ill. 2d at 241-42. In *Villalobos*, this state's highest court explained:

"Stretching *Miranda* to allow anticipatory invocations of the right to counsel would extend *Miranda* far beyond its boundaries and upset the very balance that *Miranda* sought to protect—the balance between effective law enforcement and protection of individual rights. In order to invoke the *Miranda* right to counsel, an individual must be both in custody and subject to interrogation or under imminent threat of interrogation." *Id.*

See also *People v. Campbell*, 2014 IL App (1st) 112926, ¶ 46 ("[F]or purposes of *Miranda,* an exercise of the right to counsel before a custodial interrogation has no effect.").

¶ 47    "Absent the interplay of custody and interrogation, an individual's privilege against self-incrimination is not threatened." *Villalobos*, 193 Ill. 2d at 239. In sum, "[i]f a suspect does not wish to communicate with the police except through an attorney, he can simply tell them that when they give him the *Miranda* warnings." *McNeil*, 501 U.S. at 180.

¶ 48    The majority states that "we begin our analysis by considering whether defendant unequivocally and unambiguously requested his attorney during his initial street encounter with Baxter." *Supra* ¶ 22. *Villalobos* makes plain that this is not the appropriate starting point when deciding whether defendant effectively invoked his right to counsel. Necessarily, the analysis must begin with evaluating whether defendant was subject to custodial interrogation. See *Miranda*, 384 U.S. at 444 ("[b]y custodial interrogation, we mean questioning initiated by law enforcement officers *after* a person has been taken into custody" (emphasis added)); see also *Villalobos*, 193 Ill. 2d at 241-42.

> "As used in our *Miranda* case law, 'custody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion. In determining whether a person is in custody in this sense, the initial step is to ascertain whether, in light of the objective circumstances of the interrogation [citation], a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave. [Citation.]" (Internal quotation marks omitted.) *Howes v. Fields*, 565 U.S. 499, 508-09 (2012).

¶ 49    Our supreme court in *People v. Slater*, 228 Ill. 2d 137, 150 (2008), identified several factors relevant to this inquiry:

> "(1) the location, time, length, mood, and mode of the questioning; (2) the number of police officers present during the interrogation; (3) the presence or absence of family and friends of the individual; (4) any indicia of a formal arrest procedure, such as the show of weapons or force, physical restraint, booking or fingerprinting; (5) the manner by which the individual arrived at the place of questioning; and (6) the age, intelligence, and mental makeup of the accused."

"After considering and weighing these factors, the court must make an objective determination as to whether a reasonable person, innocent of wrongdoing, would have believed he or she was free to terminate the questioning and leave." *In re D.L.H.*, 2015 IL 117341, ¶ 51 (citing *Slater*, 228 Ill. 2d at 150). The determination of whether a defendant was in custody is a fact intensive analysis conducted in the first instance by the circuit court. However, as the majority points out, the factual findings below are lacking. Absent a second remand, this necessitates that we undertake the analysis.

¶ 50    Baxter testified that he saw defendant walking with a group of people. Baxter knew that officers wanted to talk to defendant, as he was a suspect in an armed robbery. Baxter exited his squad car and called out to defendant to come and speak with him. He then told defendant to take his hands out of his pockets and patted him down. He asked defendant if he would be willing to come down to the station and talk to the investigating officers. Defendant began questioning Baxter regarding why officers wanted to speak with him. Baxter said it was regarding an armed robbery that occurred the previous night. Defendant was a suspect, but Baxter did not have details on the case beyond that. Defendant continued to question Baxter, but Baxter stated defendant would have to speak with officers about the matter for any further information. Defendant refused to voluntarily talk to the investigating officers, stating he would need to speak with his attorney. After the conversation, Baxter took the defendant into

custody and told defendant he could speak to the other officers and let them know if he wanted his attorney present.

¶ 51    Defendant also testified. He recounted how Baxter called out to him while he was with a group of friends, asked him to take his hands out of his pockets, and patted him down. Baxter asked him if he would be willing to speak to officers; defendant declined the opportunity and stated he would have to speak with his lawyer due to a previous charge. At no point in time did officers draw their firearms or "show any threat" towards defendant.

¶ 52    There was no argument below regarding whether the defendant was in custody when he attempted to invoke his right to counsel. As noted, the burden is on the defendant. In light of the record below, the encounter on the street is not the kind that presents a serious danger of coercion, nor did it objectively present an interrogation, which under the circumstances, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave.

¶ 53    Defendant was neither in custody nor subject to interrogation during the exchange when he mentioned speaking to his attorney. The only question posed to defendant during the entire conversation was whether he was willing to voluntarily talk to officers investigating the armed robbery. During the conversation, defendant was not in handcuffs, nor was he restrained in any manner while standing on a public sidewalk inferably while a large group of his friends were nearby. Baxter did not draw his firearm on defendant or exert force upon defendant consistent with an indicium of formal arrest procedure. After Baxter's initial question, defendant went on to interrogate Baxter about what he knew about the armed robbery, but Baxter did not have any details regarding the investigation except that defendant's name had come up as a suspect. According to Baxter, it was only at the end of the conversation that he took defendant into custody and told him he could repeat the prior request for counsel to the officers at the station. These facts pale in comparison to other situations where courts have found the defendant anticipatorily and ineffectively invoked the right to counsel. See *Campbell*, 2014 IL App (1st) 112926, ¶ 48 (finding that, where a special weapons and tactics team executed a search warrant at defendant's home and restrained him for officer safety but where defendant was neither under arrest nor questioned at the time he allegedly asked for an attorney, the defendant's alleged invocation of the right to counsel was anticipatory and ineffective). The factors on the whole weigh against finding defendant was in custody when he stated he would need to talk to his attorney.

¶ 54    Further, Baxter's statement that defendant could reiterate his wish to have an attorney present to officers at the station falls in line with *McNeil*. See *McNeil*, 501 U.S. at 180 ("If a suspect does not wish to communicate with the police except through an attorney, he can simply tell them that when they give him the *Miranda* warnings.").

¶ 55    Based on the record, defendant failed to carry his burden in establishing a *prima facie* case regarding an effective invocation of the right of counsel sufficient to succeed on the motion to suppress. His invocation of the right to counsel during the initial interaction with police on the street was anticipatory and ineffective.

¶ 56    In response to this dissent, the majority agrees defendant was not in custody. Nonetheless, the majority attempts to seize on what it characterizes as conflicting formulations of the rule in numerous cases stating that the imminent modifier applies to both custody and interrogation. *Supra* ¶ 31. Similarly, the majority also argues that the "rationales in *Kelsey*, *Torres*, and the

- 11 -

myriad other cases dealing with imminent interrogation apply with equal force to the imminent custody at issue in the present case." *Supra* ¶ 35. These assertions are patently wrong.

¶ 57　　In all of the cases cited to support the fallacy that there are conflicting formulations of the rule, the defendants were *actually* in custody. In those cases, the placement of the imminent modifier is of no importance. This holds true in *Villalobos*, where the court in discussing anticipatory invocations laid out the rule requiring actual custody and imminent interrogation for an effective invocation of the right. *Villalobos*, 193 Ill. 2d at 241-42. When referring to the in-custody defendant's situation, the *Villalobos* court practically focused on the imminence of the custodial interrogation. *Id.* at 241. These statements are not at odds; a reading of the *Villalobos* decision unequivocally articulates our supreme court's position on the matter of anticipatory invocations.

¶ 58　　As pointed out, the imminent custody approach and the corresponding policy concerns expressed by the majority were rejected by the Wisconsin Supreme Court in *Lonkoski*, 2013 WI 30, ¶¶ 34-41. *Supra* ¶ 32. My research reveals this would be the first time any court has applied an imminent custody analysis in this context. Moreover, defendant did not advance the imminent custody theory in the circuit court. Undeterred, the majority ignores defendant's failure to raise the issue, shoulders his burden, and reverses the lower court on a theory unknown to courts in this state.

¶ 59　　Turning next to the custodial interrogation at the station, defendant effectively asserted his right to counsel after receiving *Miranda* warnings, then subsequently initiated conversation with officers. We engage in a two-part analysis in determining the admissibility of statements given after a defendant has invoked his right to counsel. *Oregon v. Bradshaw*, 462 U.S. 1039, 1044-46 (1983). First, we review whether the police or the defendant initiated " 'further communication, exchanges, or conversations.' " *Id.* at 1044 (quoting *Edwards*, 451 U.S. at 485). If, as is the case here, defendant engages police in further discussion, we then review whether, under the totality of the circumstances, the defendant knowingly and intelligently waived his right to counsel. *Id.* at 1046. Here, defendant knowingly and intelligently waived his right to counsel. After defendant initiated further communication, Reynolds reentered the room and asked defendant to be clear whether he wanted an attorney; defendant responded that he knew he had an attorney but said that he wanted to talk. Reynolds repeated that defendant was entitled to speak to an attorney. Defendant insisted that he wanted to talk to Reynolds.

¶ 60　　The trial court did not err in denying defendant's motion to suppress.

¶ 61　　We should affirm.